## 24135

The STATE, Respondent v. Robert H. SOUTHERLAND, Appellant.

(447 S.E. (2d) 862)

Supreme Court

*Deputy Chief Atty. Joseph L. Savitz, III,* of the *S.C. Office of Appellate Defense,* Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen. Harold M. Coombs, Jr.* and *Asst. Atty. Gen. William Edgar Salter, III,* Columbia, and *Sol. Donald V. Myers,* Lexington, *for respondent.*

Heard Feb. 2, 1994.

Decided Aug. 15, 1994; Reh. Den. Sept. 15, 1994.

RUSHING, Acting Associate Justice:

Robert H. Southerland appeals his death sentence and his convictions of murder, kidnapping, armed robbery, and forgery. We affirm.

## I. *Facts*

On the evening of October 5, 1989, Southerland, Tony Cooper, David Burroughs, and Brenda McLaurin abducted Kim Quinn from her home and drove her to an isolated pond. Cooper and Southerland dragged Quinn from Cooper's car and raped her. Southerland then shot Quinn in the neck, back, and head. Cooper severed Quinn's hands and feet with an axe. Southerland and Cooper then covered Quinn's body with gasoline and debris which they set on fire. The remains of Quinn's body were discovered three days later.

We consolidate Southerland's direct appeal with our mandatory review of his death sentence pursuant to S.C. Code Ann. § 16-3-25 (1985).

## II. *Discussion*

### A. *Jury Selection*

1. *Batson*

Southerland contends that the Solicitor's explanation for striking one black juror was not racially neutral in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. (2d) 69 (1986). We disagree.

*Batson* prohibits the use of preemptive strikes in a racially discriminatory manner. To sustain a *Batson* challenge, a defendant must first make a *prima facie* showing that the solicitor exercised preemptive strikes on the basis of race. *State v. Geddis*, — S.C. —, 437 S.E. (2d) 31 (1993). A *prima facie* case under *Batson* requires more than a mere showing that the State exercised a strike against a cognizable racial group. *See State v. Smith*, 293 S.C. 22, 358 S.E. (2d) 389 (1987). Southerland merely established that the State struck one black potential juror. He did not establish any other circumstances which would raise an inference of discrimination. In fact, the State accepted two black jurors although it did not use all of its peremptory challenges. In addition, the State struck a white alternate and allowed a black alternate to sit. Accordingly, Southerland did not make a *prima facie* showing of purposeful racial discrimination.

Even if Southerland had made a *prima facie* showing of racial bias, his *Batson* challenge fails. When a defendant makes a *prima facie* showing of racial bias, the

burden shifts to the State to articulate a race neutral explanation for the strikes in question. *State v. Geddis,* — S.C. —, 437 S.E. (2d) 31 (1993). With proper caution, the trial judge held a *Batson* hearing at Southerland's request even though Southerland did not make the required *prima facie* showing. The State explained that its investigation of the juror showed that he lied on his juror questionnaire and that his co-employees found him arrogant and untrustworthy. We hold that the State's explanations were racially neutral and, therefore, did not violate *Batson.*

### 2. *Voir Dire Issue*

Southerland next contends that the trial judge improperly precluded him from examining individual jurors as to whether they would give special weight to testimony of law enforcement officers. We disagree.

We previously addressed this issue in both *State v. Davis,* — S.C. —, 422 S.E. (2d) 133 (1992), *cert. denied,* — U.S. —, 113 S.Ct. 2355, 124 L.Ed. (2d) 263 (1993) and *State v. Adams,* 279 S.C. 228, 306 S.E. (2d) 208, *cert. denied,* 464 U.S. 1023, 104 S.Ct. 558, 78 L.Ed. (2d) 730 (1983) (*overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E. (2d) 315 (1991)). In both *Adams* and *Davis* we held that jurors should not identify credible witnesses before trial; rather, jurors must determine the credibility of witnesses after hearing all the testimony. An inquiry as to the weight a juror would give one kind of witness over another invades the province of the jury to determine credibility in the context of the entire case. *Davis,* at —, 422 S.E. (2d) at 139. Based on our holdings in *Davis* and *Adams,* we find that the trial judge did not err in preventing Southerland from questioning jurors as to whether they would give special weight to a police officer's testimony.

### B. *Guilt Phase*

### 1. *Evidence of other crimes*

Southerland contends that the trial judge erred by allowing the State to introduce evidence that he stole the shotgun used to kill Quinn from a trailer two weeks before the murder and that he traded the shotgun for drugs the day after the murder. We disagree.

This Court has abolished *in favorem vitae* review, and it will only consider issues which are raised by contemporaneous objection or motion. *State v. Torrence*, 305 S.C. 45, 60, 406 S.E. (2d) 315, 324 (1991). Southerland did not object when the State initially presented the evidence in question. Therefore, he has waived his right to raise the issue on appeal. Accordingly, Southerland's claim regarding the evidence is not properly before this Court.

Even if Southerland had preserved his objection to the evidence, the introduction of the evidence at trial was proper. While evidence of other crimes is inadmissible to prove the bad character of a defendant, it may be admissible when it tends to establish (1) motive, (2) intent, (3) absence of mistake or accident, (4) a common scheme or plan, or (5) identity. *State v. Johnson*, 306 S.C. 119, 125, 410 S.E. (2d) 547, 551 (1991), *cert. denied*, — U.S. —, 112 S.Ct. 1691, 118 L.Ed. (2d) 404 (1992) (citing *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923)). The evidence showed that Southerland possessed a shotgun at the time of the murder, that the shotgun was the type used to kill Quinn, and that Southerland disposed of the shotgun after the murder. This evidence established identity and a common scheme. Therefore, we find that the trial court properly admitted the evidence.

2. *Evidence that other people had a motive to murder the victim*

Southerland argues that the trial judge erred by excluding evidence that Quinn was involved in a conspiracy to smuggle drugs into prison. He contends that this evidence would have shown that her co-conspirators had a motive to murder her. Thus, his guilt would have appeared less plausible. We find no error in the trial judge's exclusion of the evidence.

Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt. *State v. Parker*, 294 S.C. 465, 366 S.E. (2d) 10 (1988). Such facts must raise a reasonable inference as to the accused's innocence. *Id.* at 467, 366 S.E. (2d) at 11. The evidence of Quinn's involvement in a conspiracy to smuggle drugs into prison did not suggest any connection between the smuggling and Quinn's

death. At best, this evidence established that someone else may have had a motive to kill Quinn. Motive is not a requirement of the State's case. Therefore, any evidence indicating that others had a reason to kill Quinn would not exculpate Southerland. Evidence of the conspiracy to smuggle drugs into prison concerned only a remote act disconnected with the murder. We find that the trial judge exercised sound discretion in excluding this evidence.

## C. *Sentencing Phase*

### 1. *Opening statements*

Southerland next contends that the trial judge erred in denying his request to make an opening statement at sentencing. He argues that S.C. Code Ann. § 16-3-20 (Supp. 1993) grants a defendant the statutory right to an opening statement at sentencing. We disagree.

Section 16-3-20(B) provides in pertinent part:

> The State, the defendant, and his counsel shall be permitted to present arguments for or against the sentence imposed. The defendant and his counsel shall have the closing argument regarding the sentence to be imposed.

In construing a statute, words take their plain meaning without resort to forced construction. *State v. Ray,* — S.C. —, 427 S.E. (2d) 171, 174 (1993). Although the plain language of section 16-3-20 gives a defendant the right to a closing argument during sentencing, it does not give the defendant the right to an opening statement in the sentencing phase. We find that section 16-3-20 does not give the defendant a statutory right to an opening statement at sentencing and that the trial judge did not abuse his discretion in refusing Southerland's request to make an opening statement at sentencing. *See State v. Brown,* 277 S.C. 203, 284 S.E. (2d) 777 (1981) (granting and timing of opening statements are matters within the discretion of the trial judge).

### 2. *Bad character evidence of victim*

Southerland argues that the trial judge erred in refusing to allow him to introduce evidence of Quinn's involvement with drugs and prostitution. Southerland contends that because the State may offer victim impact evidence under *Payne v.*

*Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed. (2d) 720 (1991),[1] the court must allow a defendant to introduce bad character evidence of the victim. We disagree.

In *Payne,* the United States Supreme Court held that ▮ the impact of the crime on the victim and the victim's family is not *per se* inadmissible in a capital sentencing proceeding. Thus, a court may admit evidence of the specific harm done by a defendant so that a jury may meaningfully consider the defendant's blameworthiness at the sentencing phase of trial. While evidence of harm caused by the defendant may include evidence of the victim's character, it is not offered to encourage comparative character analysis. *See Id.* at —, 111 S.Ct. at 2607, 115 L.Ed. (2d) at 734. The defendant may rebut victim impact evidence offered by the State, and the Due Process Clause of the Fourteenth Amendment prohibits the use of victim impact evidence which is so unduly prejudicial that it renders the trial fundamentally unfair. *See Id.* at —, 111 S.Ct. at 2607-2608, 115 L.Ed. (2d) at 735.

In this case, the State did not introduce any victim impact evidence. Nonetheless, Southerland contends that the trial judge should have allowed him to introduce evidence of the victim's bad character in mitigation of his sentence. *Payne* prohibits this use of comparative character analysis. Accordingly, we find that the trial judge was correct in holding that *Payne* did not allow Southerland to introduce evidence of the victim's bad character as victim impact evidence.

Southerland also argues that the trial judge erred in excluding testimony that the victim was involved in smuggling drugs into prison because this evidence was a circumstance of the crime and, therefore, constituted mitigating evidence. The record, however, does not indicate that any of the people implicated in the murder were involved in smuggling drugs into prison. Therefore, this evidence was not a circumstance of the crime. We find this argument without merit.

### 3. *Residual Doubt Issue*

Southerland also contends that the trial judge erred in refusing to allow his counsel to argue that residual doubt of

---

[1] This Court adopted *Payne* in *State v. Johnson,* 306 S.C. 119, 410 S.E. (2d) 547 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 1691, 118 L.Ed. (2d) 404 (1992).

Southerland's guilt was a mitigating circumstance. We disagree.

At the sentencing phase, the trial court denied defense counsel's request to argue residual doubt concerning Southerland's guilt. However, Southerland's counsel made the following closing argument at sentencing:

> You have found that Robert is guilty. I do not quibble with that, but sentencing, sentencing is something else. Don't you want to be satisfied in your hearts beyond all doubts about what went down there?

Clearly, Southerland's attorney did argue to the jury regarding any doubt they had as to Southerland's guilt. Therefore, the trial judge's ruling did not adversely affect defense counsel's arguments.

Moreover, there is no mandate that the jury must reconsider "residual doubts" as to guilt at the sentencing phase, and residual doubts are not a mitigating factor in sentencing. *Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed. (2d) 155 (1988) (plurality opinion). We find that the trial judge did not err in refusing to allow Southerland to discuss residual doubt in the sentencing phase.

### 4. Parole Eligibility

Southerland contends that the trial judge violated both due process and the eighth amendment by refusing to instruct the jury that he would be ineligible for parole if sentenced to life under S.C. Code Ann. § 24-21-640 (Supp. 1993)[2] and section 16-3-20(A) (Supp. 1993).[3] We disagree.

When the State puts a defendant's future dangerousness at issue and state law prohibits defendant's release on parole, due process requires that a defendant

---

[2] Section 24-21-640 provides:

The board must not grant parole nor is parole authorized to any prisoner serving a sentence for a second or subsequent conviction, following a separate sentencing for a prior conviction, for violent crimes as defined in Section 60.

[3] Section 16-3-20(A) provides:

A person who is convicted of or pleads guilty to murder must be punished by death or by imprisonment for life. . . . No person sentenced under the provisions of this subsection may receive any work-release credits, goodtime credits, or any other credit that would reduce the mandatory imprisonment required by this subsection.

be allowed to bring parole ineligibility to the jury's attention by way of argument by the defense counsel or an instruction from the court. *Simmons v. South Carolina,* — U.S. —, 114 S.Ct. 2187, 129 L.Ed. (2d) 133 (1994) (plurality opinion). Here, the solicitor specifically agreed not to argue Southerland's future dangerousness. Therefore, Southerland's future dangerousness was not at issue. Moreover, defense counsel informed the jury throughout closing argument that life imprisonment for Southerland meant that he would never be released from prison. Accordingly, we find no due process violation. Additionally, because defense counsel informed the jury of Southerland's parole ineligibility, we find his eighth amendment argument meritless.

We instruct the trial bench that in death penalty cases in which future dangerousness is at issue under *Simmons* and state law prohibits the defendant's release on parole, if the sentencing jury inquires about the meaning of "life imprisonment" or counsel requests a jury charge concerning parole eligibility, the following charge be given:

> If you sentence the defendant to death you must assume that the sentence will be carried out. If a recommendation of death is not made the defendant shall be sentenced to life imprisonment without the possibility of parole.

### D. *Proportionality*

We have conducted a review pursuant to S.C. Code Ann. § 16-3-25 (1985) and conclude that the sentence is not excessive or disproportionate to the penalty imposed in similar cases. *State v. Bell,* 305 S.C. 11, 406 S.E. (2d) 165 (1991), *cert. denied,* — U.S. —, 112 S.Ct. 888, 116 L.Ed. (2d) 791 (1992); *State v. Sims,* 304 S.C. 409, 405 S.E. (2d) 377, *cert. denied,* — U.S. —, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992).

For the foregoing reasons, Southerland's convictions and death sentence are AFFIRMED.

CHANDLER, Acting C.J., MOORE, J., and WILLIAM H. BALLENGER and WALTER J. BRISTOW, JR., Acting Associate Justices, concur.