482 S.E.2d 760

The STATE, Respondent,

v.

Raymond PATTERSON, Jr., Appellant.

No. 24549.

Supreme Court of South Carolina.

Heard on Oct. 15, 1996.

Filed on Jan. 20, 1997.

Refiled Feb. 28, 1997.

8

Deputy Chief Attorney Joseph L. Savitz, III, of S.C. Office of Appellate Defense; John H. Blume, Teresa L. Norris, and David P. Voisin, all of Post–Conviction Defender Organization of S.C.; and John D. Delgado, Columbia, for appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General William Edgar Salter, III, and Assistant Attorney General Robert F. Daley, Jr., Columbia; and Solicitor Donald V. Myers, Lexington, for respondent.

MOORE, Justice:

This is a death penalty case. Appellant was convicted of murder, armed robbery, assault and battery of a high and aggravated nature, and carrying a concealed weapon. The

jury found armed robbery as the aggravating factor and recommended the death penalty.[1] We affirm.

## FACTS

On November 19, 1984, appellant, a nineteen-year-old black male, was riding with Dwayne Keels. They stopped for gas and while Keels pumped gas, appellant went next door to the Mid–Carolina Motor Inn.[2] The murder victim was Matthew Brooks, a sixty-five-year-old white male. He and his wife were in South Carolina to attend a relative's funeral. They had checked into the motel and were getting their belongings out of their car when appellant grabbed Mrs. Brooks' purse. Mr. Brooks struggled with appellant and was shot. Appellant then hit Mrs. Brooks in the face and ran. Keels by this time had finished pumping gas and was looking for appellant. He saw appellant flagging him down and he stopped to pick him up. Appellant told Keels he had tried to steal a purse and gotten into a struggle and he thought he had shot a man.

## DISCUSSION

### Change of Venue/Continuance

■■■ Appellant contends the trial court erred in denying his motion for a change of venue or, in the alternative, a continuance. We disagree. A motion to change venue is addressed to the sound discretion of the trial judge and will not be disturbed on appeal absent an abuse of discretion. *State v. Caldwell*, 300 S.C. 494, 388 S.E.2d 816 (1990). The trial judge's refusal of a motion for continuance will also not be disturbed absent a clear abuse of discretion. *State v. Tanner*, 299 S.C. 459, 385 S.E.2d 832 (1989).

■■■ Appellant contends venue should have been changed because there is widespread racial prejudice in Lexington County shown by the fact that the solicitor has not sought the death penalty against any defendant accused of murdering a black person. Appellant also contends jurors in Lexington

---

1. Appellant has been tried and sentenced to death three times for this murder.

2. This motel has also operated as the Thunderbird Motel and Holiday Inn Express.

County are death prone because when the death penalty was sought, only one defendant did not receive the death penalty. These arguments are similar to the one raised in *State v. Green*, 301 S.C. 347, 392 S.E.2d 157 (1990). In *Green*, we affirmed the trial judge's denial of a motion for a change of venue made on the ground that jurors in Charleston are more likely to impose the death penalty on black defendants. We noted the statistical evidence presented did not contain details of the nature of the crimes involved or the composition of the juries. Likewise, here, appellant has not presented any evidence about the details of the crimes in these cases, the juries, or the aggravating and mitigating circumstances involved.[3]

Appellant also contends prejudicial pretrial publicity required a change of venue or a continuance. We disagree. At trial, appellant specifically complained about an article which appeared in *The State* newspaper on the morning jury selection began. The article discussed appellant's two prior trials and their costs.

 When jurors have been exposed to pretrial publicity, a denial of a change of venue is not error when the jurors are found to have the ability to set aside any impressions or opinions and render a verdict based on the evidence presented at trial. *Caldwell, supra.* The defendant bears the burden of showing actual prejudice. *Id.* When the trial judge bases his ruling upon an adequate voir dire examination of the jurors, his conclusion that the objectivity of the jury panel has not been polluted by outside influence will not be disturbed absent extraordinary circumstances. *State v. Copeland,* 278 S.C. 572, 300 S.E.2d 63 (1982).

 In *Caldwell,* we held there was no abuse of discretion where eleven of the seated jurors and two alternates acknowledged awareness of media coverage but stated they could be impartial and decide the case based on evidence presented. Here, only seven jurors who actually sat on the jury stated

---

3. In fact, of the thirteen times the death penalty was sought, in nine cases the defendant was white and in only four cases was the defendant black.

they knew something about the case.[4] Here, the trial judge questioned every juror about his/her knowledge of the case. He disqualified six jurors who stated they could not be impartial knowing facts about the case. The remaining jurors stated they could be objective and put aside any knowledge they had about the case. The trial judge concluded the jurors could be objective. We find no abuse of discretion.

█ Appellant then claims there was inherent prejudice. In *Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the United States Supreme Court found actual prejudice when two-thirds of the seated jurors stated they had formed an opinion that the defendant was guilty even though they also stated they could be fair and impartial. Here, however, none of the seated jurors stated that they had formed an opinion about appellant's guilt. Further, the voir dire testimony and record do not reveal the kind of 'wave of public passion' that would have made a fair trial unlikely by the jury that was empaneled. *Patton v. Yount,* 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). The trial judge stated he did not believe public passion was so strong so as to not be able to believe the jurors' responses to voir dire. We agree. We hold the trial judge did not abuse his discretion in denying appellant's motions for a change of venue or continuance.

### Qualification of jurors

Appellant contends the trial judge erroneously qualified seven jurors who knew something about the case or had read *The State* article: Jurors Shealy; Marshall; Brown; Marcolini; Hunter; Whigham; and Tanner. Appellant also contends the trial judge erred in qualifying three jurors who had been the victims of crime: Jurors DeLeon, Marcolini, and McElveen.

█ Any claim that a jury was not impartial must focus on the jurors who were ultimately seated. *Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988). *See also State v. Tucker,* —— S.C. ——, 478 S.E.2d 260 (1996). Jurors Marshall, Brown, Marcolini, Whigham, DeLeon, and McEl-

---

4. Of the fifty-one jurors voir dired, seventeen stated they had read the article or part of the article.

veen were struck during jury selection. Therefore, we need not address appellant's concerns about these jurors.

 Whether to qualify a prospective juror to serve in a death penalty case is a matter of discretion which is not reversible on appeal unless wholly unsupported by the evidence. *Green, supra.* In determining whether a trial court abused its discretion in qualifying a challenged juror, individual responses of the juror must be examined in light of the entire voir dire. *Id.* We have found no error in qualifying jurors who knew of a defendant's previous conviction and death sentence which were reversed on appeal when they stated they could be fair and impartial. *State v. Drayton,* 287 S.C. 226, 337 S.E.2d 216 (1985); *State v. Atkins,* 303 S.C. 214, 399 S.E.2d 760 (1990).

Juror Shealy did not read the entire article and stated she had not formed an opinion on appellant's guilt. Juror Hunter testified she read *The State* article. She also stated she would not be influenced by the article and could be fair and impartial and listen to the evidence in reaching a decision. Juror Tanner testified he had watched a television news story on the case. He stated he knew appellant had been tried twice before. He answered negatively when the trial judge asked him if he had made up his mind based upon the report and further he stated he could put aside what he knew.

 These jurors stated they could be fair and impartial and any knowledge they had regarding the case would not influence them. Taking these jurors' responses in light of their entire voir dire, the trial judge did not err in qualifying them. Thus, we hold the trial judge did not abuse his discretion in qualifying these jurors. *Green, supra, Drayton, supra; Atkins, supra.*

*Voir Dire Questions*

 Appellant contends the trial judge erred in limiting his questions on voir dire. The authority and responsibility of the trial court is to focus the scope of the voir dire examination as set forth in S.C.Code Ann. § 14–7–1020 (Supp.1995). *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984). S.C.Code Ann. § 16–3–20(D) (Supp.1995) grants a capital defendant the right to examine jurors through counsel but does not enlarge

the scope of voir dire permitted under § 14–7–1020. *State v. Owens*, 293 S.C. 161, 359 S.E.2d 275 (1987). The manner in which these questions are pursued and the scope of any additional voir dire are matters of trial court discretion. *State v. Smart*, 278 S.C. 515, 299 S.E.2d 686 (1982).

Appellant contends the trial judge erred in limiting his questions regarding racial bias. At trial, appellant sought to ask open-ended questions to uncover racial bias. The trial judge stated he would allow appellant to ask some open-ended questions about racial bias, but he would not give appellant free-rein. Appellant agreed that was a fair decision and no objection was made. Thus, this issue is not preserved for review. *State v. Southerland*, 316 S.C. 377, 447 S.E.2d 862 (1994) (contemporaneous objection must be made to preserve issue for review).

Appellant contends the trial judge also erroneously limited his questioning on mitigating circumstances. Appellant attempted to question Juror Marshall about his feelings on expert testimony, particularly psychologists. The solicitor objected and during a lengthy colloquy, appellant stated he was attempting to determine if the juror would discount expert testimony. Appellant stated he would be glad to have the trial judge ask the question and he would "be bound by [his] decision." The trial judge asked the juror about expert testimony and appellant did not raise any further objection. Thus, this ground is not preserved. *See State v. Craig*, 267 S.C. 262, 227 S.E.2d 306 (1976) (issue not preserved for review if objecting party accepts judge's ruling and does not contemporaneously make additional objection).[5] In any event, inquiry as to the weight a juror would give one kind of witness over another invades the jury's province to determine credibility. *State v. Davis*, 309 S.C. 326, 422 S.E.2d 133 (1992).

Appellant contends the trial judge erroneously limited his questioning of Juror Hunter. Appellant asked Juror Hunter whether she could consider both sides after the State had introduced the victim's wife, pictures of the victim, and other aggravating circumstances. The solicitor objected and the trial judge rephrased the question in general terms and

---

5. We also note Juror Marshall was not ultimately seated on the jury.

asked her if she would be willing to listen to both aggravating and mitigating circumstances before making up her mind. Juror Hunter answered affirmatively. We hold the trial judge did not abuse his discretion. *See Davis, supra.*

*Solicitor's Comments During Closing Argument*

 Appellant contends the trial judge erred in overruling appellant's objections to the solicitor's comments during closing argument. Appellant first objected to the solicitor's comment: "They tried to say that Mr. Brooks killed himself." No grounds were stated for the objection and the trial judge overruled it. "[A] general objection which does not specify the particular ground on which the objection is based is insufficient to preserve a question for review." 4 C.J.S. *Appeal and Error* § 215 (1993); *State v. Bailey,* 253 S.C. 304, 170 S.E.2d 376 (1969) (trial judge commits no error in overruling general objection).

 In any event, a trial judge is vested with broad discretion in dealing with the range of propriety of closing argument, and ordinarily his rulings on such matters will not be disturbed. We must review the argument in the context of the entire record. The appellant has the burden of showing that any alleged error in argument deprived him of a fair trial. *State v. Bell,* 302 S.C. 18, 393 S.E.2d 364 (1990). The relevant question is whether the solicitor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). We find no denial of due process. The solicitor's comment was in response to the argument appellant made in his closing argument during the guilt phase. Throughout the trial, appellant contended the murder was the result of an armed robbery gone awry when Mr. Brooks attempted to fight and was shot. The solicitor's comments were invited responses to appellant's argument. Further, reviewing the argument and the entire record, we hold the comments did not deny appellant a fair trial.

 The solicitor then equated life in prison with that of a motel with appellant as the innkeeper. Appellant did not

object to these comments. Therefore, this issue is not preserved. *Southerland, supra.*

■ Appellant also contends the following was improper:

Mr. Myers: ... But what he has done is he has cast aspersions on everybody with a learning disability. He will say, 'He's got dyslexia or got a learning disability. All you folks are going to be murderers——

Mr. Voisin: Objection.

Mr. Myers: ——You are going to be killers——

Mr. Voisin: Objection.

Mr. Myers: That's what they are saying.

Mr. Voisin: No, it's not what we are saying.

The Court: The jury is going to remember what he said. He didn't say exactly that. I agree with you.

The trial judge ruled in appellant's favor and appellant failed to move to strike or request a curative instruction. Therefore, this issue is not preserved for review. *Craig, supra; State v. McFadden,* 318 S.C. 404, 458 S.E.2d 61 (Ct.App.1995).

■ Appellant contends the following comments were improper: "we are seeking the death penalty and we expect it ... Anything less than that will be a blight on the life of what remains of Ruth Brooks ... and the memory of Matthew Brooks." Appellant objected without stating any grounds and the trial judge overruled the objection. Thus, this issue is not preserved. *Bailey, supra.*

■ On appeal, appellant also contends the solicitor improperly commented on appellant's failure to testify. The solicitor stated that he had not heard anybody from the stand apologize to Mrs. Brooks. Appellant did not object to this below. Therefore, this issue is not preserved. *Southerland, supra.*

*References to Bible Story*

■ Appellant contends the trial judge erred in prohibiting him from repeating a Biblical story during closing arguments.[6] The trial judge did not err in prohibiting appellant

---

**6.** The story is found at John 8:2–11.

from conveying this story to the jury. *See State v. Johnson,* 306 S.C. 119, 410 S.E.2d 547 (1991) (solicitor did not comment on what God might do). Furthermore, appellant's argument in this case resulted in no fundamental unfairness since the trial judge permitted neither the solicitor nor appellant to argue about religion or God. *See State v. Longworth,* 313 S.C. 360, 438 S.E.2d 219 (1993).

### *Juror's Husband*

Appellant contends a juror's husband implicitly conveyed his sympathies were with the victims because throughout the trial he sat directly behind the victims in the courtroom. Appellant does not even allege any attempt by the husband to communicate with his wife. He merely claims the husband's presence on the victims' side of the courtroom implied he sympathized with the victims. This is mere speculation. Furthermore, appellant has not established any prejudice. Thus, this issue is without merit.

### *Assistant Solicitor*

Appellant contends the trial judge erred in denying his motion to disqualify Assistant Solicitor Knox McMahon. Two weeks before trial, McMahon had taken a position in another judicial circuit. Appellant argues under S.C.Code Ann. § 1–7–350 (1986) only the Attorney General has the authority to appoint a solicitor to prosecute a case outside of his circuit. At trial, appellant objected on the ground McMahon had no statutory authority to appear. On appeal, he contends this violated his equal protection and due process rights. Appellant is limited to the grounds raised at trial. *Bailey, supra* (cannot argue one ground below and another on appeal).

The absence of a constitutional ground leaves the matter to resolution by us on the basis of South Carolina law, consonant with the wide discretion accorded the trial judge in securing a fair and impartial trial. It also places upon the moving party the burden of showing actual prejudice from the failure to disqualify. *State v. Goodwin,* 250 S.C. 403, 158 S.E.2d 195 (1967). In *Goodwin,* the defendant complained that an assistant solicitor who had previously worked as a public defender and prepared a pretrial brief on his behalf

should be disqualified from prosecuting his case. We affirmed the denial of the motion to disqualify because the defendant could not show any prejudice. Here, appellant's grounds for disqualifying McMahon do not even reach the level found in *Goodwin.* Further, appellant has not alleged any actual prejudice from McMahon's participation in the trial. This issue is without merit.

### Discriminatory Application of Death Penalty

Appellant contends the trial judge erred in denying his motion to bar the solicitor from seeking the death penalty on the ground of prosecutorial discrimination. Appellant contends the solicitor violated his rights under the 6th, 8th, 13th, and 14th amendments of the U.S. Constitution and article I, §§ 3, 14, and 15 of the State constitution. Appellant cited statistics on the solicitor's decision to seek the death penalty in murder cases. He argues the solicitor has sought the death penalty against white defendants only when the circumstances are highly aggravated and never when the victim was black.

In *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), the United States Supreme Court held a full evidentiary hearing should be held if a capital defendant can establish a *prima facie* case that prosecutorial discretion in capital cases has been tainted with discrimination. This claim is essentially an equal protection claim. Appellant must provide "exceptionally clear evidence" that the decision to prosecute was for an improper reason. 481 U.S. at 297, 107 S.Ct. at 1769–70. In *McCleskey,* the Court held similar statistics did not establish discrimination. Further, as we noted above, these statistics do not take the defendant's race or the aggravating or mitigating circumstances into consideration. Appellant has not proven discriminatory purpose by exceptionally clear evidence. Therefore, we hold the trial judge did not err in denying appellant's motion.

### Lack of Blacks in Jury Pool

Appellant moved to bar the solicitor from using peremptory strikes against blacks. Appellant also moved to dismiss the venire on the ground the pool was not composed of a cross-section of the community. The trial judge denied these

motions stating appellant had failed to show a "systematic exclusion" of blacks. On appeal, appellant contends he was denied a fair trial because blacks were underrepresented on the jury. We disagree.

In order to establish a prima facie violation of the fair cross-section requirement, the defendant must show that 1) the group excluded is a "distinctive" group in the community; 2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) this underrepresentation is due to a systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). Assuming appellant can show steps 1 and 2, he has failed to show a systematic exclusion. In *Duren*, women were routinely granted exemptions upon request and, therefore, were underrepresented. Here, we do not know why any blacks were excluded.[7] Of the eighty-two members left after exemptions and excusals, 7% were black. In Lexington County, blacks account for 11% of the population. In *Duren*, women accounted for 54% of the population and only 14.5% of the challenged jury pool. In *Duren*, the Supreme Court held the "resulting disproportionate exclusion of women from the jury wheel and at the venire stage was quite obvious due to the *system* by which juries were selected." *Id.* at 367, 99 S.Ct. at 670. Appellant has not shown any system of exclusion. Therefore, the trial judge did not err in denying appellant's motions.

Appellant's remaining arguments are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Issue 2: Rule 209(h), SCACR (appellate court will not consider any fact which does not appear in record); Issue 6: *State v. Tucker, supra* (party must make contemporaneous objection to preserve issue on appeal); *State v. Crowley*, 226 S.C. 472, 85 S.E.2d 714 (1955) (objection must be on specific ground); *Bailey, supra* (party cannot argue another ground on appeal); Issue 9: *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180

---

7. Appellant concedes that blacks were not underrepresented in the entire pool which was originally called for jury duty. He also agrees statutory and other miscellaneous exemptions caused the underrepresentation.

(1986) (probative value of photographs outweighs prejudicial effect); Issue 10: *State v. Nathari,* 303 S.C. 188, 399 S.E.2d 597 (1990) (trial judge has broad discretion in determining general range and extent of cross examination); Issue 11: *State v. Adams,* 277 S.C. 115, 283 S.E.2d 582 (1981) (sentencing jury need not be instructed that divided jury results in life sentence); Issue 12: *State v. Humphries,* —— S.C. ——, 479 S.E.2d 52 (1996) (notice of victim impact evidence not required under statute and no due process violation).

*Proportionality Review*

We have reviewed the record and conclude the death sentence was not the result of passion, prejudice, or other arbitrary factors and the evidence supports the jury's finding of the aggravating circumstances. S.C.Code Ann. § 16–3–25(C)(1)–(2) (1985). The death sentence is not excessive or disproportionate to the penalty imposed in similar cases. *State v. McWee,* 322 S.C. 387, 472 S.E.2d 235 (1996) (murder during an armed robbery of convenience store); *State v. Von Dohlen,* 322 S.C. 234, 471 S.E.2d 689 (1996) (murder during armed robbery of dry cleaners); *State v. Young,* 319 S.C. 33, 459 S.E.2d 84 (1995) (murder of school principal during armed robbery in parking lot).

Appellant's convictions and sentence are

**AFFIRMED.**

TOAL, A.C.J., WALLER, and BURNETT, JJ., and GEORGE T. GREGORY, Jr., Acting Associate Justice, concur.