513 S.E.2d 606

**The STATE, Respondent,**

v.

**Stephen Andrew BECKHAM, Appellant.**

**No. 24906.**

Supreme Court of South Carolina.

Heard Dec. 15, 1998.

Decided Feb. 22, 1999.

304

306

John Delgado, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Robert E. Bogan, all of Columbia; and Solicitor W. Townes Jones, IV, of Greenwood, for respondent.

MOORE, Justice:

Appellant was convicted of murder, kidnapping, and conspiracy to commit murder. He was sentenced to life for the murder, 30 years for the kidnapping, and 5 years for the conspiracy to commit murder, all to run concurrently.[1] We affirm.

## FACTS

On June 12, 1994, Victoria Lander Beckham (Vickie) was murdered. In July 1995, Richard Anderson was arrested for her murder. He gave police a statement implicating appellant Stephen Beckham, Vickie's husband. Anderson, a bouncer from a Myrtle Beach strip bar (Smugglers), testified that appellant hired him to dispose of Vickie's body.

On June 12th at 6:15 p.m., Vickie dropped off the children at appellant's mobile home. Appellant and Vickie were separated and Vickie was returning the children to appellant for a scheduled visitation. Appellant got into the car to talk with Vickie as the children went into the home.

At the same time, Anderson waited beside a dirt road not far from appellant's driveway for appellant. Anderson testi-

---

1. The State sought the death penalty. Although the jury found several aggravating circumstances, they recommended a sentence of life.

fied that as appellant drove up in Vickie's car, he saw appellant beat Vickie with a gun. Vickie was rendered unconscious. Anderson testified appellant told him to break Vickie's neck by striking her with a pair of bolt cutters. He then told Anderson to drive her car to Little Mountain Road, wait until it was dark, and drive the car off of the mountain road in attempt to make it look as if Vickie had died in a car accident. The car, however, rolled to the wrong side of the road into a ditch and Vickie's body was discovered that same night at approximately 9:15 p.m.

## DISCUSSION

1) Reference to Sister Care

Bonnie Malasky testified about Vickie's whereabouts on June 8, 1994, at 6:30 p.m. Malasky was with Vickie when Vickie delivered the children to appellant that night. Anderson had testified he and appellant had attempted to murder Vickie on that night but they did not go through with the plan. Malasky testified that Vickie was at Sister Care between 6:30 and 9:30 p.m. on June 8th. Appellant objected and a sidebar was held. The trial judge overruled the objection. Later, on the record, appellant noted his objection and moved for a mistrial on the ground that the reference to Sister Care had injected a prejudicial issue, spousal abuse, into the case. Appellant contends the trial judge erred in denying his motion for a mistrial. We disagree.

Here, whether the reference to Sister Care implied appellant beat his wife is too speculative. Vickie could have been a volunteer at Sister Care or visiting a worker or friend who was there. *See State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991) (no error in trial judge's denial of mistrial motion when witness's testimony did not imply appellant was involved in drug dealing merely because he knew appellant during time witness was dealing drugs). *See also State v. Robinson*, 238 S.C. 140, 119 S.E.2d 671 (1961) (statement of witness that appellant told him that he was on way to probation office did not tend to create inference that accused had committed another crime); *State v. Bullock*, 235 S.C. 356, 111 S.E.2d 657 (1959) (in murder prosecution, admission of testimony by physician that when he examined body of deceased she was

without underwear and there was discharge from her vagina was not error because such testimony did not tend to create inference that accused had raped deceased). Here, in context of Malasky's testimony, the reference to Sister Care did not necessarily imply Vickie was a battered wife.

The decision to grant or deny a mistrial is within the sound discretion of the trial judge and will not be overturned on appeal absent an abuse of discretion. *State v. Crim,* 327 S.C. 254, 489 S.E.2d 478 (1997); *State v. Dawkins,* 297 S.C. 386, 377 S.E.2d 298 (1989). The granting of a motion for a mistrial is an extreme measure which should be taken only where an incident is so grievous that prejudicial effect can be removed in no other way. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998). We find no error in the denial of appellant's mistrial motion.

2) Photographs of appellant with scratches

Appellant contends three photographs of him which depicted scratches on his back and arms were erroneously admitted. We disagree.

Appellant objected on the ground of relevance pursuant to Rule 403, SCRE. Evidence is relevant if it tends to make more or less probable a fact in issue. Whether evidence is relevant in a criminal prosecution is an issue within the trial judge's discretion. *State v. McWee,* 322 S.C. 387, 472 S.E.2d 235 (1996). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Rule 403, SCRE.

Anderson testified that appellant ran from the murder scene through the woods back to his home. Following an *in camera* hearing, the trial judge ruled whether appellant received these scratches running through the woods from the crime scene back to his home went to the weight of the evidence and not its admissibility. Accordingly, the pictures were relevant and their probative value was not outweighed by any unfair prejudice. *State v. Asbury,* 328 S.C. 187, 493 S.E.2d 349 (1997) (because victim's hands and feet were bound with cut electrical cord, testimony concerning appliances and severed electrical cords found at defendant's home was relevant and probative

value of testimony was not outweighed by danger of unfair prejudice).

■ Furthermore, whether the scratches were "fresh" or not merely goes to the weight of the evidence not its admissibility. *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981) (arguments raised by appellant go toward weight of evidence not its admissibility on whether or not evidence was left by appellant at crime scene). Accordingly, we find no error.

3) Life insurance

■ Appellant contends the trial judge erred in admitting evidence that appellant was the beneficiary of a $100,000 life insurance policy on Vickie. Appellant contends the probative value of this evidence was outweighed by unfair prejudice. Rule 403, SCRE. We disagree.

■ Evidence of insurance is properly admitted when it tends to establish motive. *State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996). *See also State v. Vermillion,* 271 S.C. 99, 245 S.E.2d 128 (1978) (even if defendant is not beneficiary, evidence of life insurance policy admissible if defendant derives a benefit). Evidence of a life insurance policy is properly admitted when there is evidence of the defendant's knowledge of the policy's existence, its validity, or believed validity, and that the defendant will benefit from it. *State v. Cole,* 54 Wash.App. 93, 772 P.2d 531 (1989).

Appellant contends he was unaware that the policy on Vickie listing him as beneficiary was in effect when Vickie died. Appellant contends that there were policies taken out on both he and Vickie in 1990 but he believed her policy had lapsed. Clearly, appellant knew of the existence of the policy at one time. Appellant's argument that he thought Vickie's policy had lapsed does not prevent evidence of the policy from being admitted. It was a jury question as to whether at the time of the murder appellant had knowledge of the existence of a valid policy with him as the beneficiary. *State v. Leuch,* 198 Wash. 331, 88 P.2d 440 (1939). Accordingly, we find no error.

### 4) Tax liens

 Appellant contends the trial court erred in allowing the State to introduce evidence that two tax liens in the amounts of $27,539 and $37,864 had been filed against appellant and Vickie. Appellant objected on the grounds of relevance and that the probative value was outweighed by prejudice, pursuant to Rules 402 and 403, SCRE. We disagree.

The State introduced the tax liens to show appellant had a financial motive for Vickie's murder. Appellant contends the tax liens were too remote in time as one of them was filed in 1989, five years prior to Vickie's death. The other lien was filed in 1992. Appellant also contends once Vickie died, he became liable for the entire amount, rather than just 50%. At the time of the murder, there were two tax liens filed jointly against appellant and Vickie. The State introduced evidence that appellant knew he was the beneficiary of a life insurance policy on Vickie which would have enabled him to pay off the liens and leave him approximately $35,000. Accordingly, we hold appellant's poor financial condition was relevant to motive. *State v. Sack,* 210 Or. 552, 300 P.2d 427 (1956) (evidence as to financial condition of defendant as well as evidence tending to show that defendant would profit financially from death of his wife is relevant on issue of motive). The trial judge did not err in admitting this evidence.

### 5) Failure of State to give notice of witness

 Appellant contends the trial erred in ruling there was no prejudice by the State's failure to give notice of a witness, Elsie Fields. We disagree.

Rule 5(e), SCRimP, provides the defendant is to provide notice of his intention to offer an alibi defense and "the prosecution shall serve upon the defendant or his attorney the names and addresses of witnesses upon whom the State intends to rely to *establish defendant's presence at the scene of the alleged crime."* (emphasis added).

There is no dispute that Fields was not listed as a witness who might testify to refute appellant's alibi defense. Fields was visiting Bishop Beckham and his wife on June 12th. Fields testified that she saw appellant coming from the pond on the Beckham property around 7:00 p.m. on June 12th.

Fields' testimony did not place appellant at the crime scene. Accordingly, the trial judge did not err in not excluding her testimony.

### 6) Chastising witness

█ Appellant contends the trial judge erred when he chastised a defense witness, appellant's father, in the presence of the jury. We disagree.

Appellant's father, Bishop Beckham, testified for appellant. During cross-examination, he was openly hostile to the Solicitor on several occasions. At one point, the trial judge held a bench conference and admonished the Bishop to respond to the questions and cautioned him about editorializing. With the jury out of the courtroom, appellant's counsel talked privately with the Bishop about his "style" or demeanor on the stand. Cross-examination continued and the solicitor asked the Bishop whether appellant was with the Bishop during a conversation with the coroner. The Bishop answered: "You're saying, I really don't recall Stephen being with me. You're saying that." Another bench conference was held after which the trial court again admonished the Bishop:

> I've warned you the last time. Now next time you make an editorial comment to the attorney examining you, I'm going to hold you in contempt. . . . Now just answer the question without any editorial comment. Whether people believe it or not, when they're on the witness stand, lawyers have some latitude about asking questions and you've got to respond to it. A cross-examination is always a more intense period for everybody. But nevertheless, you editorialize again, I'm going to hold you in contempt.

Appellant did not make a contemporaneous objection. *State v. Johnson*, 324 S.C. 38, 476 S.E.2d 681 (1996) (a contemporaneous objection is required at trial to preserve an issue for appellate review). After the Bishop completed his testimony, appellant objected to this admonition on the ground that a negative feeling towards the Bishop was conveyed to the jury. The trial court offered to give a curative instruction. However, nothing further was requested. Accordingly, there is no issue preserved for review. *See Johnson, supra; State v. George*, 323 S.C. 496, 476 S.E.2d 903 (1996) (no issue is

preserved for appellate review if objecting party accepts judge's ruling and does not contemporaneously make additional objection to sufficiency of curative charge or move for a mistrial). Further, appellant did not later object to the trial court's failure to give a curative instruction.

In any event, a trial judge has the inherent power to maintain order and decorum in his courtroom. *See, e.g., State v. Shelton,* 270 S.C. 577, 243 S.E.2d 455 (1978) (trial judge has inherent power to maintain order in his court). " 'Generally, the act of a judge in a criminal case in admonishing, rebuking, or warning a witness because of the latter's language or conduct is not such misconduct as to require a new trial. The court may reprove or rebuke a witness for levity or profanity, and it is proper for him to correct the volubility of a witness and admonish those who show hesitation, reluctance, or evasion.' " *State v. Tuckness,* 257 S.C. 295, 185 S.E.2d 607 (1971) (quoting 58 Am.Jur.2d *New Trial* § 54). Accordingly, we find no error.

### 7) Evidence of fire

Appellant contends the trial judge erred in allowing the State to present evidence that an extinguished fire was found behind appellant's mobile home the day after the murder. Appellant contends there was no evidence retrieved from the fire and therefore any testimony about it was speculative and irrelevant. We disagree.

Under Rule 401, SCRE, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402, SCRE, provides that all relevant evidence is admissible. Here, the State's theory was that appellant had destroyed some evidence by burning it.

The attempted destruction of evidence is regarded as a relevant incriminating circumstance. *See State v. Epes,* 209 S.C. 246, 39 S.E.2d 769 (1946). Appellant's argument that there was nothing retrieved from the fire would go its weight rather than admissibility. *State v. Sullivan,* 277 S.C. 35, 282 S.E.2d 838 (1981) (arguments raised by appellant go toward weight of evidence not its admissibility on whether or not

evidence was left by appellant at crime scene). Accordingly, we find no error.

8) Evidence of flight

■ Appellant contends the trial judge erred in allowing evidence of flight. We disagree.

An arrest warrant was issued for appellant on July 11, 1995. Appellant and his family had left early that morning for a vacation to Florida. Appellant and his children checked into a Daytona Beach hotel room for one hour. Appellant then checked out and drove all night to Kentucky.

■ Evidence of flight has been held to constitute evidence of guilty knowledge and intent. *State v. Thompson*, 278 S.C. 1, 292 S.E.2d 581 (1982) (evidence of flight admissible to show guilty knowledge, intent, and that defendant sought to avoid apprehension). The critical factor to the admissibility of evidence of flight is whether the totality of the evidence creates an inference that the defendant had knowledge that he was being sought by the authorities. *State v. Brown*, 528 A.2d 1098 (R.I.1987). *See also Commonwealth v. Jones*, 457 Pa. 563, 576, 319 A.2d 142, 150 (1974) (it is sufficient that circumstances justify inference that accused's actions were motivated as result of his belief that officers were aware of his wrongdoing and were seeking him for that purpose). Flight or evasion of arrest is a circumstance to go to the jury. *State v. Turnage*, 107 S.C. 478, 93 S.E. 182 (1917).

Appellant attempted at trial to explain that his trip to Florida was a planned family vacation. However, all of the testimony then establishes that once in Florida appellant became aware that he was wanted and instead of returning to South Carolina, he went to Kentucky. Appellant attempted to counter with testimony that he planned to turn himself in after spending some time with his children. However, whether he was going to eventually return does not make the evidence of flight inadmissible. It merely goes to its weight. *State v. Sullivan, supra.* Accordingly, we find no error.

9) Search warrant

■ Appellant contends the search warrant issued on July 11, 1995, should have been quashed and the latex gloves seized

from his mobile home during the execution of this warrant should not have been admitted into evidence. We disagree.

First, appellant contends the search warrant was obtained based upon stale information. The police submitted an affidavit to establish probable cause to search appellant's mobile home for a gun after Anderson, in early July 1995, told police that he saw appellant hit Vickie with a gun on the day she was murdered. A probable cause affidavit must state facts so closely related to the time of the issuance of the warrant as to justify a finding of probable cause at that time. *State v. Winborne*, 273 S.C. 62, 254 S.E.2d 297 (1979). In *State v. Corns*, 310 S.C. 546, 426 S.E.2d 324 (Ct.App.1992), the Court of Appeals quoted the following language from *United States v. Steeves*, 525 F.2d 33 (8th Cir.1975):

> While the lapse of time involved is an important consideration and may in some cases be controlling, it is not necessarily so. There are other factors to be considered, including the nature of the criminal activity involved, and the kind of property for which authority to search is sought. Obviously, a highly incriminating or consumable item of personal property is less likely to remain in one place as long as an item of property which is not consumable or which is innocuous in itself or not particularly incriminating.

In *Steeves*, the court went on to note that the ski mask and clothing sought in the warrant were not incriminating in themselves and that people who own guns generally keep them at home or on their persons. Considering the totality of the circumstances, the court in *Corns* concluded it could not say the time lapse invalidated the warrant as a matter of law.

Whether "averments in an affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case." *United States v. Hershenow*, 680 F.2d 847, 853 (1st Cir.1982). Here, Anderson's statement was not obtained until his arrest one year after the murder. He told the police that appellant had used a gun in the commission of the murder. We hold that based upon the totality of the circumstances in this case, the averments in the affidavit were not stale and the search warrant was valid.

■ Second, appellant contends the evidence seized pursuant to the search warrant was beyond the scope of the warrant. We disagree. The search warrant stated the police were looking for a gun. The police not only seized a gun, but also a pair of latex gloves found in a night side table in appellant's bedroom. Appellant contends the police should not have seized the gloves because their incriminating nature was not immediately apparent. We disagree.

■ Under the "plain view" exception to the warrant requirement, objects falling within the plain view of a law enforcement officer who is rightfully in a position to view the objects are subject to seizure and may be introduced as evidence. *State v. Brown,* 289 S.C. 581, 347 S.E.2d 882 (1986). In order for evidence to be seized under the plain view exception, three things must be shown: (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities. *State v. Culbreath,* 300 S.C. 232, 237, 387 S.E.2d 255, 257 (1990). Here, the officers were lawfully searching appellant's mobile home for a gun when they seized the latex gloves. In his statement, Anderson asserted appellant wore gloves during the commission of the murder. Appellant's contention that the gloves belonged to his daughter was an issue for the jury; it does not make the seizure of the gloves improper. Accordingly, the trial judge did not err in admitting the gloves.

10) Denial of fair trial and due process

Appellant contends the trial judge denied him a fair trial and due process by excluding various defense evidence. We disagree.

■ Appellant contends the trial judge erred in not allowing him to admit evidence of third party guilt. Evidence offered by a defendant as to the commission of the crime by another person is limited to facts which are inconsistent with the defendant's guilt. *State v. Parker,* 294 S.C. 465, 366 S.E.2d 10 (1988). Here, the evidence which appellant sought to introduce regarding third party guilt would not exculpate him. *See State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862

(1994), *overruled on other grounds by State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995). Appellant attempted to introduce evidence that there were two men on Little Mountain Road on the night of the murder and that someone else had been with Anderson. Accordingly, the exclusion of this evidence was not error.

Appellant then sought to introduce evidence that SLED agent "Spike" McCraw during his investigation had been looking for two men who had been seen on Little Mountain Road between 8:30 and 9:30 p.m. on the night of the murder as impeachment evidence. During cross-examination, McCraw denied this. To impeach McCraw, appellant sought to introduce an affidavit which McCraw had made to a magistrate in which McCraw stated he was looking for two men seen on Little Mountain Road on June 12th. The State objected and the trial judge sustained the objection. The trial judge stated that the evidence was nothing more than an attempt by appellant to inject third party guilt into the trial. Appellant proffered McCraw's testimony during which McCraw admitted he had originally been looking for two men and that a man named Michael Beatty had been a suspect. Beatty was the owner of the car which Anderson borrowed to drive to Columbia. Appellant contends the trial judge erred in not allowing him to impeach McCraw with the affidavit which appellant contends is a prior inconsistent statement under Rule 613(b), SCRE.

Recently, in *State v. Fossick,* 333 S.C. 66, 508 S.E.2d 32 (1998), we held the trial judge erred in not admitting impeachment evidence under Rule 613(b), SCRE. In *Fossick,* we concluded the error was harmless. We applied the factors set forth in *Delaware v. Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686 (1986) for determining whether an issue of witness credibility is harmless error:

"Whether such an error is harmless in a particular case depends upon a host of factors.... The factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-

examination otherwise permitted, and of course, the overall strength of the prosecution's case."

■ Likewise, here, the trial judge erred in not admitting the impeachment evidence but we find the error was harmless. McCraw's testimony was not that important to the State's case. Much of McCraw's testimony was merely cumulative to Anderson's testimony [2] and corroborated by other evidence. The majority of McCraw's testimony was about the phone records of appellant, appellant's father, Vickie's father, Anderson, Anderson's employer (Smuggler's), and several pay phones, and appellant's bank records. McCraw also testified as to Anderson's statement and how he had investigated the information contained in the statement. Appellant was permitted to extensively cross-examine McCraw. Lastly, the State's case was fairly strong. Anderson's testimony and the evidence of flight were very damning. After considering the *Van Arsdall* factors in light of the evidence against appellant, we hold the exclusion of this impeachment evidence was harmless.

■ Appellant then contends the trial judge erred in excluding a composite drawing of the second man. The composite drawing depicted an individual other than Anderson or appellant and was drawn based upon the statement of Sam Martin. Martin allegedly saw two men by a car on the side of Little Mountain Road on the night of June 12th. Martin did not testify at trial. Appellant attempted to introduce the composite drawing during the cross-examination of Jerry Wright, a deputy with the Newberry County Sheriffs Office. The State objected on the grounds that the composite was improper third party guilt evidence and hearsay. The trial judge sustained the State's objection. Appellant contends he was attempting to impeach Anderson's testimony that there was not a third person involved in the murder.

We find the exclusion of this impeachment evidence was harmless as it was cumulative. Robert Bowers testified that he and Johnnie Hawkins drove by Little Mountain Road on the night of June 12th. Bowers testified that Hawkins had

---

**2.** At one point, appellant objected to McCraw's testimony as merely bolstering Anderson's testimony.

told him he saw two persons by the side of Little Mountain Road on June 12th.[3] Thus, there was some impeachment evidence admitted at trial to support appellant's theory that there were two people on the side of Little Mountain Road on June 12th. *See State v. Merriman*, 287 S.C. 74, 337 S.E.2d 218 (Ct.App.1985) (admission of the results of witness's polygraph examination would have been merely cumulative to other evidence impeaching his credibility; thus its exclusion was harmless). Thus the admission of the composite as impeachment evidence would have been cumulative and therefore any error in its exclusion was harmless.

■ Appellant contends the trial judge erred in excluding the proffered testimony of Jamie Suber, appellant's nephew. During the early morning hours of June 13th, appellant and Suber were questioned by the police. Appellant sought to introduce Suber's testimony that the police had told him that appellant had confessed and named Suber as an accomplice. The State objected to this testimony on the ground of hearsay. Appellant wanted to offer this testimony to illustrate the police tactics. Further, appellant argued the statements were an exception to hearsay under Rule 803(3), SCRE, as going to the police officer's state of mind or as a statement made by a party-opponent under Rule 801(d)(2), SCRE. The trial judge ruled this evidence was irrelevant.

We find no error in excluding this evidence. The police tactics and police officers' state of mind were not relevant as this evidence did not make anything of consequence to the action more or less probable. See Rule 401, SCRE.

■ Appellant also contends the trial judge erred in excluding impeachment evidence of phone calls from the residence of Rick Mitchell, a bouncer at Smuggler's, to the Myrtle Beach area and one collect call from an unidentified Anderson, South Carolina phone to Smuggler's. Mitchell lived in Anderson at the time of the trial. Mitchell testified that appellant had approached him about killing his wife. Mitchell also testified that he had not been in contact with anyone from Smuggler's in Myrtle Beach for a year or more prior to the

---

3. Hawkins did not testify.

trial. Appellant wanted to impeach Mitchell with these phone records.

When a witness denies an act involving a matter collateral to the case in chief, the inquiring party is not permitted to introduce contradictory evidence to impeach the witness. *State v. DuBose*, 288 S.C. 226, 341 S.E.2d 785 (1986). Thus, we hold the trial judge did not err in excluding evidence of these calls.

**AFFIRMED.**

FINNEY, C.J., WALLER and BURNETT, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.