531 S.E.2d 524

STATE of South Carolina, Respondent,

v.

Wesley Aaron SHAFER, Jr., Appellant.

No. 25120.

Supreme Court of South Carolina.

Heard Oct. 7, 1999.

Decided May 8, 2000.

294

David I. Bruck, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General S. Creighton Waters, of Columbia; and Solicitor Thomas E. Pope, of York, for respondent.

BURNETT, Justice:

Appellant admitted he shot and killed Ray Broome while attempting to rob the convenience store where Broome was working. Appellant maintained the killing was without malice.[1] A jury convicted appellant of murder, attempted armed robbery, and conspiracy. He was sentenced to death for murder and consecutive terms of twenty years' imprisonment and five years' imprisonment, respectively, for attempted armed robbery and conspiracy.[2] Appellant appeals.

## FACTS

Around 11:30 p.m. on April 12, 1997, appellant and Justin Porter drove to the Hot Spot, a convenience store, in Porter's

---

1. During the penalty phase of trial, appellant's expert witness testified appellant shot Broome in response to a lifetime of abuse and violence.

2. The jury found the statutory aggravating circumstance of murder while in the commission of an attempted armed robbery while armed with a deadly weapon. S.C.Code Ann. § 16–3–20(C)(a)(1)(d) (Supp. 1998).

truck. Appellant and Porter entered the store. When they returned to the truck, Porter, the driver, spun the back tires of the vehicle and appellant, using his father's gun and bullets he purchased earlier, fired four or five shots from the passenger window as they drove away.

At approximately 1:00 a.m., appellant, Porter, and Adam Mullinax returned to the Hot Spot. Witnesses left the Hot Spot because they suspected trouble.

Appellant, Porter, and Mullinax entered the Hot Spot. Mullinax went into the bathroom then returned to the truck. Appellant and Porter also went into the store, then stood outside the Hot Spot for a few minutes. While Broome was away from the cash register, Porter entered the Hot Spot. He tried to open the cash register but was unsuccessful. He returned outside.

Porter and appellant entered the store again. Broome had returned to the register booth. Appellant went to the checkout counter and shot Broome from several feet away. Broome fell to the floor. Appellant walked to another side of the register, fumbled with the gun, leaned over the register counter, and shot Broome a second time.[3] Appellant and Porter's attempt to open the cash register failed. Appellant and Porter left. There is no evidence appellant or Porter asked Broome for money before the shooting.

Three young women arrived as appellant and Porter fled the Hot Spot and jumped into the truck. One of the women ran into the store, found Broome on the floor, and telephoned for emergency services. When the police arrived, Broome was still breathing. He had been shot twice in the head.[4] Broome died at the hospital.

Appellant wrapped Mullinax's shirt around the gun and initially hid it in the woods. He hid his own shirt and Porter's shirt elsewhere. Twelve hours after the shooting, appellant told an employee at another convenience store he was going to the park to shoot basketball.

---

3. Appellant waited eight seconds before firing the second shot.

4. All the events inside the Hot Spot were recorded on the store's security camera.

After his arrest, an investigator asked appellant had Broome done anything to cause appellant to shoot. Appellant responded: "No. We were sitting around in the woods talking about what we were going to do with him, and I'm the one that had the gun, and I guess I just snapped."

## ISSUES [5]

I. Did the trial court err by refusing to instruct the jury appellant was parole ineligible?

II. Did the trial judge err by granting the State's motion to prohibit both the prosecution and defense from referring to the Bible or using religious references during closing argument?

III. Did the trial judge err by refusing to allow appellant to reopen the record to present evidence on deterrence or, alternatively, for a curative instruction after the solicitor argued the general deterrent effect of the death penalty?

## DISCUSSION

### I.

Appellant argues, for various reasons, the trial court erred by refusing to instruct the jury he was parole ineligible. We disagree.

After closing arguments, relying on *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), appellant requested the trial court instruct the jury he would be ineligible for parole. The trial court denied the request.

Thereafter, the trial judge instructed the jury "life imprisonment means until the death of the defendant." He later stated: "[i]n deciding whether to sentence the defendant to death or to life imprisonment, I remind you that death means just what it says, death. Life imprisonment means incarceration of the defendant until his death."

After three and one-half hours of deliberation, the jury returned with the following questions:

1. Is there any remote chance for someone convicted of murder to become eligible for parole?

---

5. All issues stem from the sentencing phase of appellant's trial.

2. Under what conditions would someone convicted for murder be eligible?

Regarding Question 1, appellant agreed the trial court should instruct the jury "life imprisonment means until the death of the offender" and requested the court read the portion of § 16–3–20(A) which explains no person sentenced to life imprisonment is eligible for parole or any other form of release or credits which would reduce a life sentence. Appellant stipulated Question 2 could not be answered. After the trial judge informed the parties of his intended response to the jury's questions, appellant requested the trial judge delete any reference to parole eligibility.[6]

The trial judge responded to the jury's questions as follows: Your consideration is restricted to what sentence to recommend. I will remind you that what you recommend is what I will impose as trial judge. Section 16–3–20 of our Code of Laws as applies to this case in the process we're in states that, 'for the purposes of this section life imprisonment means until the death of the offender.' Parole eligibility or ineligibility is not for your consideration.

Appellant excepted stating, "we would renew our objection under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the State and Federal Constitutions." The trial judge noted the exception.

## A.

Appellant argues he was entitled to a charge on parole ineligibility after the solicitor placed his future dangerousness in issue. He contends *Simmons* mandates a parole ineligibility instruction and refusal to give the charge violated his right to due process. We disagree.

When the State places the defendant's future dangerousness at issue and the only available alternative sentence to the death penalty is life imprisonment without parole, due

---

6. The trial judge stated he would charge the jury as follows: "[y]our consideration is restricted to what sentence to recommend. I will, as trial judge, impose the sentence you recommend. Section 16–3–20 of the South Carolina Code of Laws provides that for the purpose of this section life imprisonment means until the death of the offender. Parole eligibility is not for your consideration."

process entitles the defendant to inform the jury he is parole ineligible. *Id.; State v. Williams,* 321 S.C. 327, 468 S.E.2d 626 (1996). Due process is violated when the State "raise[s] the specter of [the defendant's] future dangerousness generally, but then thwart[s] all efforts by [the defendant] to demonstrate that, contrary to the prosecutor's intimations, he never would be released on parole and thus, in his view, would not pose a future danger to society." *Simmons,* 512 U.S. at 165, 114 S.Ct. 2187 (1994) (plurality opinion).

■ Appellant was tried under the new sentencing scheme which became effective on January 1, 1996. S.C.Code Ann. § 16–3–20·(Supp.1998). Under the new sentencing scheme, a defendant can be sentenced to 1) death, 2) life without the possibility of parole, or 3) a mandatory minimum thirty year sentence. We recently held *Simmons* is inapplicable under the new sentencing scheme because life without the possibility of parole is not the only legally available sentence alternative to death. *State v. Starnes,* 340 S.C. 312, 531 S.E.2d 907 (2000).[7] Accordingly, appellant's due process rights were not violated by the trial judge's refusal to instruct the jury appellant was parole ineligible.

Appellant argues *Simmons* mandates a charge on parole ineligibility when the State argues future dangerousness and the *jury's sentencing recommendation* is limited to death or life without the possibility of parole, even though some other sentence is available. We do not read *Simmons* so narrowly. By its own terms, *Simmons* requires the trial judge instruct the jury the defendant is parole ineligible only if no other sentence than death, other than life without the possibility of parole, is *legally available* to the defendant. *Simmons,* U.S. at 178 (O'Connor, J., concurring) ("[a]lthough the only alternative sentence to death *under state law* was life imprisonment without the possibility of parole...".) (emphasis added). This interpretation is supported by decisions from other jurisdictions. *Ramdass v. Angelone,* 187 F.3d 396 (4th Cir.1999) (*Simmons* is inapplicable if, at time of sentencing proceeding,

7. In *Starnes,* we suggested, under the terms of the statute, it is arguable a defendant could be sentenced to more than thirty years and be eligible for parole after service of thirty years. For purposes of this discussion, we assume appellant was parole ineligible.

defendant is parole eligible under state law; hence where judgment had yet to be entered for defendant's third murder conviction, defendant was parole eligible under "three strikes" law); *United States v. Flores,* 63 F.3d 1342 (5th Cir.1995), *cert. denied,* 519 U.S. 825, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996) (because sentencing guidelines vest district court with discretion to adjust life sentence downward, life sentence without possibility of parole is not only legal sentence other than death which defendant might receive and, therefore *Simmons* is inapplicable); *Allridge v. Scott,* 41 F.3d 213 (5th Cir.1994), *cert. denied,* 514 U.S. 1108, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995) (*Simmons* applies where capital defendant is ineligible for parole as a matter of law; *Simmons* does not apply even if it is unlikely defendant would be paroled); *People v. Simpson,* 172 Ill.2d 117, 216 Ill.Dec. 671, 665 N.E.2d 1228, *cert. denied,* 519 U.S. 982, 117 S.Ct. 436, 136 L.Ed.2d 334 (1996) (*Simmons* inapplicable where capital defendant is statutorily eligible for a sentence less than natural life imprisonment); *State v. McLaughlin,* 341 N.C. 426, 462 S.E.2d 1 (1995), *cert. denied,* 516 U.S. 1133, 116 S.Ct. 956, 133 L.Ed.2d 879 (1996) (*Simmons* inapplicable where alternative to death is not life imprisonment without possibility of parole). At the time appellant's jury began its deliberations, three alternative sentences were available. Since one of these alternatives to death was not life without the possibility of parole, *Simmons* was inapplicable.[8]

---

8. The dissent contends the cases cited herein are inapposite. Although the sentencing alternatives under consideration in each case referenced above may differ from those in South Carolina's new capital sentencing statute, each of the cases support the conclusion due process requires the jury be informed the capital defendant is parole ineligible where the only sentencing alternatives are death or life without the possibility of parole and the prosecution argues the defendant's future dangerousness. Excepting *Flores,* in each of the cases cited above, the capital defendant was parole eligible, therefore, due process did not mandate the jury be informed the defendant was parole ineligible. In *Flores,* although parole ineligible, the federal district judge could have departed from the sentencing guidelines and imposed a sentence less than life imprisonment. Accordingly, due process did not require the jury be informed Flores was parole ineligible. As fully discussed in *State v. Starnes, supra,* because death and life without the possibility of parole are not the only sentence alternatives under the new sentencing statute, due process does not require the jury be informed the defendant is parole ineligible.

## B.

Appellant contends the failure to inform the jury he was parole ineligible violated the Eighth Amendment prohibition against the arbitrary infliction of the death penalty.[9] He specifically argues the failure to inform the jury of his parole ineligibility prevented him from presenting mitigating evidence in support of a sentence less than death and diminished the reliability of the jury's sentencing decision. In light of the new sentencing statute, he asks the Court to reconsider its policy prohibiting the trial judge from informing the jury a capital defendant is parole ineligible.

■ Initially, we note this issue is not properly preserved for appellate consideration. After the trial judge responded to the jury's question, appellant stated he excepted "on the basis of the Eighth Amendment." He offered no explanation or argument in support of the exception. Appellant's objection to the supplemental instruction is simply too vague for the Court to review. *State v. Bailey*, 253 S.C. 304, 170 S.E.2d 376 (1969) (general objection leaves nothing for Court to review). Clearly, appellant never argued, as he does now, that the Eighth Amendment requires a charge on parole ineligibility as mitigating evidence and to ensure the reliability of the sentence imposed. *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 479 S.E.2d 67 (Ct.App.1996) (an objection should be sufficiently specific to bring into focus the precise nature of the alleged error so that it can be reasonably understood by the trial judge).

■ In any event, the Eighth Amendment requires that a death sentence not be imposed arbitrarily. *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). It prohibits the State from limiting the sentencer's consideration of "any relevant mitigating evidence" which could cause the jury to decline to impose the death penalty. *Payne v. Tennessee*, 501 U.S. 808, 822, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), *citing Eddings v. Oklahoma*, 455 U.S. 104, 114, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). The United States Supreme Court has "deferred to the State's choice of substantive factors relevant to the penalty determination." *California v. Ramos*,

---

9. U.S. Const. amend. VIII.

463 U.S. 992, 1001, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983). Whether parole eligibility is relevant to the sentencing determination is a matter of state law. *Id.; see Simmons v. South Carolina,* 512 U.S. 154, 176, 114 S.Ct. 2187, 129 L.Ed.2d 133 (O'Connor, J., concurring) ("[t]he decision whether or not to inform the jury of the possibility of early release is generally left to the States.").[10]

In South Carolina, parole eligibility is not relevant to a jury's sentencing considerations. *State v. Young,* 319 S.C. 33, 459 S.E.2d 84 (1995) (defendant who was parole eligible after service of thirty years not entitled to charge on parole eligibility). The refusal to inform the jury of the capital defendant's parole eligibility does not violate the Eighth Amendment. *Id.*

Although we have never explicitly ruled whether the Eighth Amendment entitles a capital defendant to a charge informing the jury he is parole *in* eligible, precedent suggests no such instruction is required.[11] In *State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (Chandler, J., concurring), the Court held the defendant who was parole ineligible due to a prior conviction for a violent crime was not entitled to a charge informing the jury of his parole ineligibility. In *State v. Southerland,* 316 S.C. 377, 447 S.E.2d 862 (1994), *cert. denied* 513 U.S. 1166, 115 S.Ct. 1136, 130 L.Ed.2d 1096 (1995), *overruled on other grounds State v. Chapman,* 317 S.C. 302, 454 S.E.2d 317 (1995), we concluded there was no Eighth Amendment violation where the trial judge did not instruct the jury the defendant was parole ineligible but defense counsel argued "life imprisonment" means the defendant will never be released from prison. In *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), the United States Supreme Court declined to hold the Eighth

---

**10.** *O'Dell v. Netherland,* 521 U.S. 151, 165, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997) ("[i]n *Simmons,* the Court carved out an exception to the general rule described in *Ramos* by, for the first time ever, requiring that a defendant be allowed to inform the jury of the postsentencing legal eventualities.").

**11.** Appellant agrees there has been a blanket prohibition against any instruction on parole eligibility or ineligibility.

Amendment requires the jury to be informed a capital defendant is parole ineligible.

Relying on *Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986), appellant asserts parole ineligibility is a mitigating circumstance of which the jury should have been informed. We disagree.

■ As noted above, the Eighth Amendment prohibits the State from limiting the sentencer's consideration of "any relevant mitigating evidence." *Payne v. Tennessee,* 501 U.S. 808, 822, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). For purposes of the Eighth Amendment, mitigating evidence is "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1, *citing Eddings v. Oklahoma,* 455 U.S. 104, 110, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *see State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996) (mitigating circumstances are details specific to the character of the defendant on trial and/or the circumstances of the crime he committed which are considered in order to reduce the degree of his moral culpability or guilt). In *Skipper,* the Supreme Court held evidence of the defendant's good behavior while in jail awaiting trial was potentially mitigating because it indicated he would not pose a danger in the future. Accordingly, excluding evidence of the defendant's future adaptability violated the Eighth Amendment.

■ Unlike a defendant's behavior in prison, parole ineligibility is not an aspect of a defendant's character or record. Parole eligibility or ineligibility is a legislative determination; it is not mitigating evidence. *See State v. Patterson,* 299 S.C. 280, 384 S.E.2d 699 (1989), *vacated on other grounds* 493 U.S. 1013, 110 S.Ct. 709, 107 L.Ed.2d 730 (1990) (information regarding requirements for parole eligibility is not mitigating evidence); *State v. Matthews,* 296 S.C. 379, 373 S.E.2d 587 (1988), *cert. denied,* 489 U.S. 1091, 109 S.Ct. 1559, 103 L.Ed.2d 861 (1989) (punishment for a crime cannot serve as a mitigating sentencing consideration); *see also State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996) (the general effect of capital punishment as a deterrent to crime is not a mitigating circum-

stance). The Eighth Amendment is not violated by refusing to inform the jury a capital defendant is parole ineligible.

Appellant asserts since all capital defendants are now parole ineligible, the Court should permit juries to be informed of parole ineligibility. He claims providing juries with accurate information on parole ineligibility will eliminate prejudicial misinformation juries hold concerning parole eligibility and produce more reliable sentencing determinations. We disagree.

 Traditionally, in South Carolina it is the jury's duty and responsibility in the sentencing phase of a capital trial to impose a punishment authorized by law in consideration of the circumstances of the crime and the characteristics of the individual defendant. The jury is not authorized to legislate a plan of punishment. *State v. Plath*, 281 S.C. 1, 313 S.E.2d 619, *cert. denied* 467 U.S. 1265, 104 S.Ct. 3560, 82 L.Ed.2d 862 (1984); *see State v. Atkinson*, 253 S.C. 531, 172 S.E.2d 111 (1970), *citing State v. White*, 27 N.J. 158, 142 A.2d 65, 76 (1958) ("the Legislature committed to the jury the responsibility to determine in the first instance whether punishment should be life or death. It charged another agency with the responsibility of deciding how a life sentence shall be executed. The jurors perform their task completely when they decide the matter assigned to them upon the evidence before them. What happens thereafter is no concern of theirs."), *overruled on other grounds State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). The jury's duty is the same under the new sentencing statute. While a defendant's parole ineligibility could affect the jury's decision, it nonetheless remains an irrelevant factor which the jury should not consider. Affirmatively mentioning an irrelevant factor would undermine the jury's decisionmaking process and result in a decision which is less, rather than more, reliable. As a matter of policy, we maintain it is inappropriate to inform the jury the capital defendant is parole ineligible. The Eighth Amendment does not compel a different result. *Jones v. United States*, 527 U.S. 373, 381–83, 119 S.Ct. 2090, 2099, 144 L.Ed.2d 370 (1999) (a death sentence is not arbitrary within the meaning of the Eighth Amendment "if the jury is not given any bit of information that might possibly influence the individual juror's voting behavior.").

## C.

Appellant argues the trial judge's supplemental instruction was erroneous. He contends 1) in responding to the jury's questions, the trial judge should have informed the jury he was parole ineligible, 2) the trial judge's admonition, "parole eligibility or ineligibility is not for your consideration," incorrectly suggested he was parole eligible, and 3) the trial judge erred by refusing to read that portion of the sentencing statute which referred to parole ineligibility. We disagree.

### 1.

As noted above, parole eligibility or ineligibility is not relevant to a capital jury's sentencing considerations and the issue of parole should not be injected into the jury's deliberations. *State v. Ard*, 332 S.C. 370, 505 S.E.2d 328 (1998); *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). When a *jury inquires* about parole, the trial court should instruct the jury it shall not consider parole eligibility in reaching its decision and the terms "life imprisonment" and "death penalty" should be understood in their ordinary and plain meaning. *State v. Norris*, 285 S.C. 86, 328 S.E.2d 339 (1985), *overruled on other grounds State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991).[12]

In keeping with *Norris*, the trial judge's supplemental instruction properly told the jury not to consider parole eligibility or ineligibility. Although *Norris* was decided prior to the new sentencing statute, we find no reason to require a different response when the jury inquires about parole.

Moreover, as noted above, three potential sentences were available: 1) death, 2) life imprisonment, or 3) a mandatory minimum thirty year sentence. Appellant was not eligible for parole under any of these sentences.[13] Nonetheless, as suggested by appellant, by asking for information on parole, the jury was attempting to ascertain the length of time appellant

---

12. In *Ard* we held the trial judge's erroneous mention of parole was harmless. To the extent *Ard* suggests the trial judge should charge the jury on parole eligibility if requested by the defendant, it is overruled. We note *Ard* was decided eight months after the present case was tried.

13. *But see* footnote 7.

would realistically spend in prison if sentenced to life imprisonment. Informing the jury appellant was parole ineligible when, unbeknownst to the jury, he faced a possible sentence of thirty years imprisonment after which he would be unconditionally released would not have fairly responded to the jury's inquiry.

## 2.

■■■ Furthermore, contrary to appellant's argument, the trial judge's admonition, "parole eligibility or ineligibility is not for your consideration," did not suggest appellant was parole *eligible.* Unlike the admonitions in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), "you are not to consider parole" and parole "is not a proper issue for your consideration," the instruction here specifically informed the jury not to consider either parole eligibility or ineligibility and, therefore, did not imply appellant was parole eligible.

## 3.

■■■ Finally, in response to the jury's questions, appellant requested the trial judge read that portion of the sentencing statute highlighted below:

A person who is convicted of or pleads guilty to murder must be punished by death, imprisonment for life, or by a mandatory minimum term of imprisonment for thirty years. **If the State seeks the death penalty and a statutory aggravating circumstance is found beyond a reasonable doubt pursuant to subsections (B) and (C), and a recommendation of death is not made, the trial judge must impose a sentence of life imprisonment. For purposes of this section, 'life imprisonment' means until the death of the offender. No person sentenced to life imprisonment pursuant to this section is eligible for parole, community supervision, or any early release program, nor is the person eligible to receive any work credits, education credits, good conduct credits, or any other credits that would reduce the mandatory life imprisonment required by this section.** No person sentenced to a mandatory minimum term of imprisonment for thirty years

pursuant to this section is eligible for parole or any early release program, nor is the person eligible to receive any work credits, education credits, good conduct credits, or any other credits that would reduce the mandatory minimum term of imprisonment for thirty years required by this section.

Section 16–3–20(A) (Supp.1998).

We find no error or prejudice from the trial judge's refusal to read the highlighted portion of the statute. Again, neither parole eligibility nor parole ineligibility are proper considerations for the jury. *State v. Ard*, 332 S.C. 370, 505 S.E.2d 328 (1998); *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). Furthermore, appellant's suggestion that providing the jury with the highlighted language would promote "truth-in-sentencing" is tenuous. The highlighted text provides the jury with only those portions of the sentencing statute which appellant deems favorable but excludes any reference to other less favorable sentencing options.

We conclude the supplemental instruction was appropriate.

## II.

 Appellant argues he was deprived of his right to make religious arguments to the jury. We disagree.

Over appellant's objection, the trial judge granted the State's motion to prohibit references to the Bible or religion during closing argument by both the prosecution and defense. Appellant proffered several religious arguments he had considered including in his closing argument.

In his closing argument, appellant stated:

There's a story about a woman who broke the law a long, long, long time ago. Before we had electricity, before we had lethal injection, we still had the death penalty. There was a time that she had been caught, she was caught for breaking the law, and the people in her community gathered around her, and they were going to kill her for what she had done. They had the objects they were going to use to kill her in their hands, and she stood before them. Somebody walked in and said 'I'm not denying that what she did was wrong, this isn't about what she did was wrong, this is about

what statement are you going to make about being confronted with this.'

The story that I referenced, a very great man discussed with them about not killing the woman, and they didn't.

We find no error in the trial judge's ruling. Previously, we have held there is no fundamental unfairness when the trial judge precludes the solicitor and the defense from arguing about God or religion. *State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760, *cert. denied* 522 U.S. 853, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997). In any event, the record clearly demonstrates appellant was not prejudiced by the trial judge's ruling. Although he was not permitted to make all of his religious arguments, appellant conveyed the Biblical story of Jesus and the adulterous woman. *State v. Bennett*, 328 S.C. 251, 493 S.E.2d 845 (1997) (capital defendant was not prejudiced by sustained objection to his religious argument where record indicated he made the argument nonetheless). The trial judge did not abuse his discretion in granting the State's motion to prohibit references to the Bible or religion during both the prosecution and defense closing arguments. *See State v. Patrick*, 289 S.C. 301, 345 S.E.2d 481 (1986) [14] (trial judge is vested with broad discretion in dealing with the range and propriety of closing arguments and ordinarily his rulings on such matters will not be disturbed).

## *III.*

 In the penalty phase closing argument, the solicitor argued the death penalty deters others from committing murder. Thereafter, appellant requested the trial judge either reopen the case to allow him to present statistical evidence the death penalty does not deter murder or, alternatively, to instruct the jury to disregard the solicitor's comments regarding general deterrence. The trial judge denied both requests. Appellant argues this was error. We disagree.

 In South Carolina, our case law is abundantly clear: while both the prosecution and defense may argue their respective opinions regarding the general deterrent effect of

14. *Overruled on other grounds Brightman v. State*, 336 S.C. 348, 520 S.E.2d 614 (1999); *Casey v. State*, 305 S.C. 445, 409 S.E.2d 391 (1991).

the death penalty, neither may present evidence supporting their views. *State v. George,* 323 S.C. 496, 476 S.E.2d 903 (1996).[15] Accordingly, the trial judge did not err by refusing appellant's request to reopen the record for the purpose of presenting evidence on the deterrent effect of the death penalty.

Furthermore, we have never directly held it is reversible error to refuse to give such a curative instruction where the solicitor argues general deterrence. *See State v. McWee,* 322 S.C. 387, 472 S.E.2d 235 (1996), *cert. denied* 519 U.S. 1061, 117 S.Ct. 695, 136 L.Ed.2d 618 (1997) (where solicitor argued specific deterrence, requested charge on general deterrence was not required); *State v. Longworth,* 313 S.C. 360, 438 S.E.2d 219 (1993), *cert. denied* 513 U.S. 831, 115 S.Ct. 105, 130 L.Ed.2d 53 (1994) (where solicitor did not argue general deterrence, refusal to charge general deterrence need not be considered); *State v. Patterson,* 285 S.C. 5, 327 S.E.2d 650 (1984), *cert. denied* 471 U.S. 1036, 105 S.Ct. 2056, 85 L.Ed.2d 329 (1985), *overruled on other grounds State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991) (refusal to charge general deterrence is properly refused as function of jury is to determine appropriate penalty for present charge). In fact, our cases have repeatedly allowed the solicitor to argue his opinion regarding the deterrent effect of capital punishment. *State v. Truesdale,* 301 S.C. 546, 393 S.E.2d 168, *cert. denied* 498 U.S. 1074, 111 S.Ct. 800, 112 L.Ed.2d 861 (1990); *State v. Jones,* 298 S.C. 118, 378 S.E.2d 594 (1989); *State v. Yates,* 280 S.C. 29, 310 S.E.2d 805 (1982), *cert. denied* 462 U.S. 1124, 103 S.Ct. 3098, 77 L.Ed.2d 1356 (1983), *overruled on other grounds State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991). Since argument on general deterrence is permitted, it would be illogical to instruct the jury it may not consider the effect of its sentence on others.

Finally, in light of his freedom to argue capital punishment does not discourage others from committing murder, appellant's due process was not violated by the trial judge's denial of his request to present evidence on general deterrence or

---

**15.** Because the General Assembly has approved the propriety of capital punishment, evidence attempting to establish its effectiveness or ineffectiveness as an instrument of deterrence is irrelevant.

charge the jury not to consider the deterrent effect of the death penalty.

## PROPORTIONALITY REVIEW

After reviewing the entire record, we conclude the death sentence was not the result of passion, prejudice, or any other arbitrary factor, and the jury's finding of a statutory aggravating circumstance is supported by the evidence. *See* S.C.Code Ann. § 16–3–25 (1985). Further, we hold the death penalty is neither excessive nor disproportionate to that imposed in similar cases. *See State v. Hughes*, 328 S.C. 146, 493 S.E.2d 821 (1997), *cert. denied*, 523 U.S. 1097, 118 S.Ct. 1674, 140 L.Ed.2d 798 (1998); *State v. Patterson*, 324 S.C. 5, 482 S.E.2d 760, *cert. denied*, 522 U.S. 853, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997); *State v. Simpson*, 325 S.C. 37, 479 S.E.2d 57, *cert. denied*, 520 U.S. 1277, 117 S.Ct. 2460, 138 L.Ed.2d 217 (1996); *State v. Humphries*, 325 S.C. 28, 479 S.E.2d 52, *cert. denied*, 520 U.S. 1268, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1996); *State v. McWee*, 322 S.C. 387, 472 S.E.2d 235 (1996), *cert. denied*, 519 U.S. 1061, 117 S.Ct. 695, 136 L.Ed.2d 618 (1997); *State v. Sims*, 304 S.C. 409, 405 S.E.2d 377 (1991), *cert. denied*, 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed.2d 434 (1992).

**AFFIRMED.**

MOORE, WALLER, JJ., and Acting Justice THOMAS C. HUFF, concur.

FINNEY, C.J., dissenting in a separate opinion.

FINNEY, Chief Justice:

I respectfully dissent, and would reverse and remand for a new sentencing proceeding.

Under the 1996 amendments to S.C.Code Ann. § 16–3–20, all capital defendants face one of three sentences:

(1) death; or

(2) life in prison until death; or

(3) unconditional release after service of a minimum term of thirty years, with no possibility of parole.[1]

---

1. In this opinion and in *State v. Starnes*, 340 S.C. 312, 531 S.E.2d 907 (2000), the Court has avoided directly deciding the parole eligibility

Appellant contends that since he was parole ineligible as a matter of state law, the jury was entitled to be charged this fact when they inquired. I agree.

The majority deems the holding in *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), inapplicable because appellant's sentencing options were not limited to death or life without possibility of parole, and cites a number of cases in support of this proposition. In all the cited cases except one, however, the defendant's sentencing possibilities included one in which he would be parole eligible. The only case in which the defendant did not face a potential parolable sentence was *United States v. Flores*, 63 F.3d 1342 (5th Cir.1995). *Flores* involves a federal conviction, and parole has been abolished in the federal system. It is inapposite to the present South Carolina sentencing scheme, as are all the other cases cited. While I concede that *Simmons* does not directly control this case [2], the overriding principle to be drawn from that decision is that due process is violated when a jury's speculative misunderstanding about a capital defendant's parole eligibility is allowed to go uncorrected. Here, the jury's inquiry prompted a misleading response which suggested parole was a possibility. In my opinion, due process mandates reversal.

status of a capital defendant who receives a term of years sentence. In my opinion, we must decide this question today in order to address the jury charge issues raised by appellant. The murder statute is clear as to certain defendants: "No person sentenced to a mandatory minimum term of imprisonment for thirty years pursuant to this section is eligible for parole ... or any other credits which would reduce the mandatory minimum term of imprisonment for thirty years required by this section." § 16–3–20(A) (Supp.1999). Since the murder statute is silent as to the parole eligibility of defendants receiving a sentence in excess of the mandatory minimum, the general rule controls. Under § 16–1–10(d) (Supp.1999), murder is exempt from the classification system, and under § 24–13–100 (Supp.1999), persons convicted of exempt offenses are ineligible for parole. Thus, although a capital defendant may receive a sentence of a term of years, he is ineligible for parole whatever the duration of that term.

**2.** We are not concerned with whether a *Simmons* charge was warranted at the initial charge to the jury since future dangerousness was not an issue, but rather with the procedure to be followed when a capital jury inquires about parole.

Further, if the decision whether to inform juries which inquire about parole eligibility is simply one of policy, as the majority suggests in Part I C, then why not adopt a policy which gives the jurors the simply truth: no parole. The majority acknowledges, as it must,[3] that parole considerations "could" affect a jury's sentencing decision,[4] but then deems it "irrelevant" and denigrates its importance as "[a] bit of information that might possibly influence the individual juror's voting behavior." The specter of parole haunts every capital sentencing proceeding in this State, and I cannot understand why, given the simplicity of our new sentencing scheme in which no capital defendant is ever parole eligible, we would make a policy decision prohibiting the dissemination of the truth.

Of course, I would not stop with a charge that the defendant was not parole eligible, for that is only half the truth. I would tell the jury that if no aggravating circumstance is found, the defendant faces a minimum of thirty years without possibility of early release, but that if aggravating circumstances are found, then the alternatives are death or life in prison until death.

For these reasons, and with instructions that henceforth juries which inquire shall be charged the truth about sentencing, I would reverse and remand for a new sentencing proceeding in this matter.

---

**3.** Given the regularity with which capital juries inquire about parole, we cannot deny its role in sentencing.

**4.** See Bowers, Vandiver & Dugan, *A New Look at Public Opinion On Capital Punishment: What Citizens and Legislators Prefer,* 22 Am. J.Crim.L. 77 (1994).