**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Helen Marie Douglas, Respondent,

v.

State of South Carolina, Petitioner.

Appellate Case No. 2011-202766

———————

Appeal From Colleton County
G. Thomas Cooper, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2016-UP-316
Submitted January 1, 2016 – Filed June 22, 2016

———————

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED IN PART**

———————

Attorney General Alan McCrory Wilson, Senior Assistant Deputy Attorney General Salley W. Elliott and Assistant Attorney General James Rutledge Johnson, all of Columbia, for Petitioner.

Tricia A. Blanchette, Law Office of Tricia A. Blanchette, LLC, of Columbia, for Respondent.

———————

**PER CURIAM:** Helen Marie Douglas was convicted of murder and armed robbery and received concurrent sentences of life imprisonment and thirty years imprisonment, respectively. Douglas appealed, and this court affirmed in part, reversed in part, and remanded for a new trial on both charges. *State v. Douglas*, 359 S.C. 187, 597 S.E.2d 1 (Ct. App. 2004) (hereinafter *Douglas I*). The State appealed, and our supreme court affirmed in part and reversed in part. *State v. Douglas*, 369 S.C. 424, 426, 632 S.E.2d 845, 846 (2006) (hereinafter *Douglas II*). It affirmed this court's finding that the trial court abused its discretion in the admission of certain insurance testimony, but reversed our determination of reversible error—finding the admission of that testimony harmless—and upheld Douglas's convictions. *Id.* at 433, 632 S.E.2d at 849. Thereafter, Douglas sought post-conviction relief (PCR), which was granted. On appeal, the State contends the PCR court erred in granting relief based upon its findings regarding trial counsel's ineffectiveness in relation to counsel's failure to (1) investigate and call alibi witnesses; (2) properly apply law, call witnesses, and cross-examine witnesses concerning third party guilt; (3) properly investigate and challenge a secretly recorded statement by Douglas; (4) investigate and challenge two statements made by Douglas while she was on medication; (5) adequately review and use two witness statements for impeachment purposes and to support suppression of evidence; and (6) object to the trial court's statement at sentencing concerning its sentencing options. Mindful of our standard of review, requiring great deference be given to the findings of fact and conclusions of law of the PCR court and affirmance if the PCR court's findings are supported by any probative evidence in the record, *Hyman v. State*, 397 S.C. 35, 42, 723 S.E.2d 375, 378 (2012), we reverse the PCR court's grant of relief based upon its findings of ineffectiveness during the guilt phase of the trial and its ordering of a new trial.[1] However, we affirm the PCR court's determination of trial counsel's ineffectiveness in failing to object at Douglas's sentencing, and we remand for a new sentencing hearing on the murder charge alone.[2]

1.     **Alibi Witnesses**

In making its finding of ineffectiveness in this regard, the PCR court stated trial counsel failed to call any of the seven witnesses he listed as an alibi defense for

---

[1]  The relevant facts are set forth in *Douglas I* and *Douglas II*.

[2]  We decide this case without oral argument pursuant to Rule 215, SCACR.

Douglas to testify as to Douglas's whereabouts on the night of the murder. However, Douglas only presented the testimony of three of those witnesses at her PCR hearing, none of whom could provide an alibi for Douglas for the time of the murder. Because Douglas failed to present any evidence at the PCR hearing supporting an alibi defense, the PCR court erred in finding trial counsel ineffective in this regard. *See Glover v. State*, 318 S.C. 496, 498, 458 S.E.2d 538, 540 (1995) ("[S]ince an alibi derives its potency as a defense from the fact that it involves the physical impossibility of the accused's guilt, a purported alibi which leaves it possible for the accused to be the guilty person is no alibi at all." (citing *State v. Robbins*, 275 S.C. 373, 271 S.E.2d 319 (1980))); *id.* at 498-99, 458 S.E.2d at 540 ("In order to support a claim that trial counsel was ineffective for failing to interview or call potential alibi witnesses, a PCR applicant must produce the witnesses at the PCR hearing or otherwise introduce the witnesses' testimony in a manner consistent with the rules of evidence.").

**2. Failure to Present a Defense, Examine Witnesses, and Effectively Challenge Evidence**

We also find the PCR court erred in finding trial counsel was ineffective in failing to present a defense of third party guilt or properly examine witnesses or challenge evidence.

**a.** As to the PCR court's determination that trial counsel failed to identify the trial court's incorrect application of *State v. Gay*, 343 S.C. 543, 541 S.E.2d 541 (2001), *abrogated by Holmes v. South Carolina*, 547 U.S. 319 (2006), to a circumstantial evidence case in regard to third party guilt, we note the trial court did not improperly apply *Gay* in analyzing the matter. At the time of Douglas's trial in April 2001, *Gay* was the most recent pronouncement and the controlling law on third party guilt. Because *Gay* was the controlling authority at the time of Douglas's trial, trial counsel did not provide ineffective assistance in this matter, as trial counsel cannot be found deficient for failing to predict a change in the law. *See Harden v. State*, 360 S.C. 405, 408, 602 S.E.2d 48, 49 (2004) (finding petitioner's counsel was not deficient in failing to advise petitioner or object to petitioner's sentencing because "[a]n attorney is not required to anticipate potential changes in the law which are not in existence at the time of the conviction"); *Gilmore v. State*, 314 S.C. 453, 457, 445 S.E.2d 454, 456 (1994) ("We have never required an attorney to be clairvoyant or anticipate changes in the law which were not in existence at the time of trial." (citing *Thornes v. State*, 310 S.C. 306, 309–10, 426 S.E.2d 764, 765 (1993))), *overruled on other grounds by Brightman v. State*, 336 S.C. 348, 351 n.4, 520 S.E.2d 614, 615 n.4 (1999).

**b.**     We likewise find error in the PCR court's finding that trial counsel was ineffective in presenting a defense of third party guilt by failing to proffer or call certain witnesses and failing to utilize the latitude given by the trial court to address third party guilt on cross-examination or otherwise challenge evidence.

Based upon a thorough review of the entire record, we find the PCR court made numerous incorrect and inaccurate findings, much of the testimony cited by the PCR court was actually presented at Douglas's trial, and the decision of the PCR court is unsupported by the evidence and/or constitutes an error of law. Specifically, in regard to the PCR court's findings regarding trial counsel's failure to present Douglas as a trial witness, we note as follows: Evidence of Ronald's past drug use and problems with drugs was brought out by both the State—in direct examination of Ronald at trial—and by trial counsel—in cross-examination of trial witnesses Ronald, Tony, and Shelly.  Likewise, trial counsel elicited testimony on cross-examination of Ronald that he had taken money from Douglas in the past. While no evidence was presented at the trial that Ronald had, specifically, been violent toward Douglas, there was evidence presented at trial on cross-examination that Ronald had cut the brake lines of a former girlfriend's car, he had a temper, he had struck Shelly before, and he could get violent when provoked.  The testimony presented at the PCR hearing does not indicate when Ronald was allegedly violent with Douglas or how such related to possible third party guilt of Ronald, as it was not directed toward the victim.  Additionally, in the deposition testimony of Ronald, submitted by Douglas at the PCR hearing, Ronald testified to a time where he had gotten into a physical altercation with Douglas, explaining it occurred when he was drunk and Douglas had attempted to hit him after she became irate that Ronald had refused to burn down someone else's property.  In conjunction with this testimony, Ronald recounted numerous other incidents in which Douglas had engaged, or attempted to engage, Ronald in various criminal acts against the property of others, including putting syrup in the oil of a car, burning crosses in yards, cutting tires, and burning down another property.  Thus, it would have been reasonable for trial counsel not to explore this line of questioning at trial, potentially opening the door to this harmful evidence against Douglas.  Further, in our review of Douglas's PCR testimony, we found nothing to support the PCR court's findings regarding the following: Douglas's observation of Ronald driving by on the night of the murder—though notably trial counsel did elicit testimony at trial that Ronald would have driven within a block of the town house on his way home from work late that night; Douglas's concerns that Ronald thought Shelly was spending time with the victim; or that Ronald was familiar with the area where evidence was found in the creek.  Further, trial counsel successfully elicited

testimony from Tony at the trial that Ronald was generally familiar with the area around the river house. As to Douglas's PCR testimony that Ronald found the evidence at the river house, this was clearly presented at trial. We further note the trial court agreed if Douglas testified at her trial, the State could potentially call as a reply rebuttal witness the individual the trial court had excluded regarding Douglas's alleged attempt to hire him to kill the victim. Accordingly, we find no basis for concluding trial counsel was ineffective in failing to present Douglas's testimony at trial.

We likewise find a review of witness Kuhn's PCR testimony does not support the court's finding that Kuhn was "shocked" no witnesses were called at trial, and we fail to see how Kuhn's opinion regarding who was guilty of the crimes based on his familiarity in representing Douglas in a civil trial is sufficient to show ineffectiveness of trial counsel.

In regard to the PCR testimony of Hamlet and Davenport, numerous findings of the PCR court are mischaracterizations of the testimony, or are patently incorrect. For example, neither testified Douglas was not comfortable shooting a gun. Rather, Hamlet testified that Douglas told her on one occasion that she found it "too hard to shoot" a particular pistol she had in her possession on one occasion. Davenport testified that Douglas talked to him about buying a gun to shoot snakes and rodents and he told her to "buy a .410." Additionally, Davenport did not testify the area where the evidence was located in the creek was inaccessible by boat. In regard to Davenport's testimony that the creek would go dry, although Davenport did testify at the PCR hearing he thought Douglas "would have been stupid if she put [the evidence] there," evidence was presented to the jury at trial regarding the fluctuation in the creek's levels, with one witness testifying on cross-examination that the water level would fall so low that her pontoon boat would sit on the mud. Additionally, we disagree with the PCR court's assignment of any effective impeachment value to Hamlet's testimony concerning trial witness Creech. Hamlet's testimony on this point reveals, at most, Creech was surprised that Douglas had not sent more money with Hamlet to pay Creech for work he had performed for Douglas. Even assuming Hamlet's testimony indicated Creech's displeasure with Douglas, it is insufficient to show trial counsel was deficient in failing to call Hamlet to the stand when the result would have been to give up the last argument to the jury in exchange for testimony of questionable value. As to the testimony from Hamlet and Davenport concerning seeing Douglas after she had been physically attacked by Ronald, a review of their PCR testimony shows only that they observed Douglas with bruises after she told them she had an altercation with Ronald, but not that they actually witnessed Ronald physically abusing his

mother.  Further, it appears Hamlet's testimony in this regard could have opened the door to the previously mentioned testimony from Ronald concerning why he may have attacked Douglas, which potentially included extremely damaging evidence against Douglas.

In regard to the PCR court's findings concerning the evidence custodian, Taylor, and the possibility of missing evidence, we find the PCR court erred in relying on this to determine trial counsel was ineffective in failing to present evidence to establish Douglas's innocence and Ronald's guilt.  Douglas failed to put forth any evidence or argue how any possible stains on the victim's underwear had any relevance to this case.  Further, we can discern no import of such.  *See Dempsey v. State*, 363 S.C. 365, 369, 610 S.E.2d 812, 814 (2005) (holding the PCR court erred in granting relief on the basis that trial counsel was ineffective in failing to subpoena the victim's grandfather to testify at trial when it could not be determined what the victim's grandfather would have said in his testimony, and any prejudice to Dempsey was merely speculative).  In regard to the microcassettes and recorder, the only testimony concerning what was on the tapes was from Douglas.  She testified the recorder with a microcassette contained a recording of her, indicating she "want[ed] to get in the truck to go with [the victim] when he was supposedly going hunting, and he cursed [her] out, put [her] out, and another one . . . [she] was begging him to make up with [her], and he didn't want to make up."  We fail to see the evidentiary value of this missing evidence.  Even if there was some slight value in showing Douglas had asked the victim if she could go hunting with him, it ultimately indicated the victim declined to hunt with Douglas.  Further, there is no indication when this conversation may have occurred.  Additionally, Douglas's own description of the conversation on the tape would have supported the State's theory of discord between Douglas and the victim.

We also find no evidence to support the PCR court's finding that trial counsel was deficient in failing to "actively raise" any conflict with Investigator Stanfield acting as the lead investigator based upon his relationship with Shelly.  A thorough review of the record reveals this matter was raised numerous times throughout Douglas's trial by trial counsel in cross-examination of Ronald, Shelly, and Investigator Stanfield and was addressed by trial counsel in the closing argument.

Additionally, after a thorough review of the record, we find the PCR court's findings concerning witness Beach are unsupported by the record.  While the PCR court found Beach testified Investigator Stanfield was "untruthful," the record reflects merely that the trial testimony about Beach being present for the conversation concerning the wiring of Investigator Stanfield was incorrect, and

Beach acknowledged that Investigator Stanfield could have discussed the matter with the Sheriff. Further, while Beach did testify he would not have condoned the private searches conducted in this case, we fail to see how this called Investigator Stanfield's credibility into question, as this court has previously found the private searches were not sanctioned by law enforcement, but were undertaken by Ronald on "his own accord." *Douglas I*, 359 S.C. at 201-02, 597 S.E.2d at 8.

The PCR court found trial counsel failed to properly cross-examine several of the State's witnesses in order to establish Douglas's claims of innocence and third party guilt, citing to the PCR testimony of Tony and Webster, as well as the depositions of Ronald admitted in the PCR hearing. First, a review of Tony's PCR testimony shows, contrary to the PCR court's findings: Tony was not aware Ronald physically abused Douglas; Ronald was not familiar with the area where the evidence was found; and evidence that Ronald stole from his mother, he had a drug problem, and he was prone to violence was, in fact, elicited by trial counsel at trial.

The PCR court also found, after Webster testified on direct that Douglas had expressed concern about the victim telling Douglas he wanted a divorce shortly before the victim was found dead, trial counsel failed to ask him on cross-examination why Douglas would have been concerned about a divorce if she had just killed the victim and knew he was dead, and that "[o]ne simple question . . . could have devastated . . . the State's theory of the case," exculpating Douglas and implicating Ronald. However, we fail to see how trial counsel questioning Webster in this manner would have implicated Ronald in any way. Further, we note that the jury already had before it testimony that Douglas expressed concern to Webster that the victim wanted to divorce her and the State's theory was that Douglas knew the victim was already dead at that time. While it may have been an appropriate question to ask Webster, we do not assign such lofty consequences as devastating the State's theory of the case. Given the fact that the jury had the information before it such that it could easily have drawn its own conclusion as to the import of it, even assuming *arguendo* trial counsel was deficient in failing to ask this one specific question on cross-examination, Douglas was not prejudiced thereby. *See Southerland v. State*, 337 S.C. 610, 616, 524 S.E.2d 833, 836 (1999) ("[T]he burden of proof is upon [an applicant] to show that counsel's performance was deficient as measured by the standard of reasonableness under prevailing professional norms. . . . [T]he [applicant] must prove that he or she was prejudiced by such deficiency to the extent of there being a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

The PCR court also summarily found it reviewed Ronald's trial testimony and the testimony from his two civil depositions and found "trial counsel failed to properly utilize [Ronald's] cross-examination to establish third party guilt." However, the court fails to point out specific areas trial counsel could or should have addressed with Ronald and does not explain how trial counsel was deficient in this regard. Further, as previously referenced, Ronald's deposition testimony included substantial damaging testimony from Ronald in regard to Douglas, which could have opened the door to very damaging evidence against Douglas.

The PCR court also found trial counsel failed to argue in his directed verdict motion or closing that the State neglected to present evidence to establish the elements of armed robbery. However, this court addressed, and ultimately affirmed, Douglas's direct appeal assertion that the trial court erred in denying her directed verdict motion because the State failed to prove the required elements of armed robbery. *Douglas I*, 359 S.C. at 205-06, 597 S.E.2d at 10-11. Accordingly, the issue was preserved for appeal and ruled upon by this court and, therefore, the PCR court's finding that trial counsel failed to argue the same in its directed verdict motion is clearly in error. As to the PCR court's finding that trial counsel failed to argue the elements of armed robbery in his closing, it is clear trial counsel focused closing arguments on the third party guilt of Ronald. Thus, it was reasonable for trial counsel to not argue to the jury that the elements of armed robbery were not met because his claim was that Ronald, and not Douglas, committed the crimes.

The PCR court's numerous findings in support of its determination that trial counsel was ineffective in failing to present a defense are incorrect or inaccurate, rely on mischaracterizations of testimony, could have invited evidence damaging to Douglas, would not have been helpful, were inconsequential, and/or reflect testimony already elicited by trial counsel before the jury. Accordingly, there is no probative evidence to support the PCR court's conclusion in this regard and we find the PCR court erred in finding trial counsel failed to properly present a defense. *See Holland v. State*, 322 S.C. 111, 113, 470 S.E.2d 378, 379 (1996) (holding a PCR court's findings should not be upheld if there is no probative evidence to support them). Further, assuming *arguendo* there is some evidence to support any deficiency by trial counsel, Douglas was not prejudiced because there is not a reasonable probability such would have affected the outcome of Douglas's trial. *See Dawkins v. State*, 346 S.C. 151, 156, 551 S.E.2d 260, 262 (2001) ("To show prejudice, the applicant must show, but for counsel's errors, there is a reasonable probability the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." (citing *Brown v. State*, 340 S.C. 590, 593, 533 S.E.2d 308, 309-10 (2000))).

### 3.     Secretly Recorded Statement

We also find the PCR court erred in finding, despite an objection raised at trial to the statement, trial counsel was deficient in failing to properly investigate and argue against the statement made by Douglas at her river house that she did not know was being recorded.  We note, as with numerous other instances in the PCR court's order, its findings concerning Beach include mischaracterizations and incorrect or inaccurate statements.  First, Investigator Stanfield never testified that the Sheriff and Beach "fitted" him with a wire.  Rather, the testimony from the investigator is that he discussed with the Sheriff and Beach the matter of Douglas wanting him to come out to the river house, and at that time they decided the investigator would use a recorder.  Further, as discussed above, Beach was not "adamant that [Investigator] Stanfield's testimony was not true."  Instead, Beach stated he was not involved in the matter, but the investigator could have spoken to the sheriff about it.  Additionally, the court's order mischaracterizes Beach's testimony in regard to him "not fit[ting] [Investigator] Stanfield with a wire" and the investigator "not follow[ing] proper procedure in obtaining his secret[] recording of [Douglas]."  There was no evidence whatsoever at trial concerning whether the investigator had Beach "fit" him with a wire.  Further, Beach did not testify at the hearing that the investigator did not follow proper procedure.  A review of his PCR hearing testimony reveals that Beach would not have sanctioned the manner in which Douglas was recorded at her river house, i.e., with a recorder instead of a wire which would have allowed other personnel close by to overhear the conversation and take action if there were a problem.  Thus, Beach's testimony does not indicate he would not have approved of a secret recording of Douglas, but only that he would have employed a different method of recording, primarily for officer safety.  At any rate, even assuming *arguendo* that trial counsel was ineffective in failing to argue against the admission of this statement on some other ground than that raised at trial, we find the PCR court erred in determining there is a reasonable probability the outcome of the trial would have been different, as this court already determined in *Douglas I* that "any error in the failure to suppress [Douglas's secretly recorded] statement was harmless given the substance of the conversation was cumulative in nature."  359 S.C. at 200, 597 S.E.2d at 8.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (holding, to receive relief, a PCR applicant must show (1) counsel was deficient and (2) counsel's deficiency caused prejudice); *id.* at 694 (defining prejudice as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

**4.     Nov. 4, 1997 Statements**

The PCR court found trial counsel's failure to request a *Jackson v. Denno*[3] hearing to address the voluntariness of the two November 4, 1997 statements taken while she was under the influence of medication amounted to deficient performance. The court stated it was not satisfied with trial counsel's explanation that the statements were consistent, and trial counsel failed to articulate a reasonable explanation for such deficient performance. However, the PCR court failed to make any determination on the second prong of *Strickland*. 466 U.S. at 687 (holding, to receive relief, a PCR applicant must show (1) counsel was deficient *and* (2) counsel's deficiency caused prejudice); *id.* at 694 (defining "prejudice" as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" and holding "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome"); *Southerland*, 337 S.C. at 616, 524 S.E.2d at 836 ("[T]he burden of proof is upon [an applicant] to show that counsel's performance was deficient as measured by the standard of reasonableness under prevailing professional norms," and "he or she was prejudiced by such deficiency to the extent of there being a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Further, as with this court's determination in *Douglas I* concerning the secretly recorded statement, we find a review of the substance of these two statements shows they were cumulative in nature,[4] and therefore their admission, even assuming error, was harmless. *Douglas I*, 359 S.C. at 200, 597 S.E.2d at 8.

**5.     Failure to Review and Use Statements of Others for Impeachment**

We hold the PCR court erred in finding trial counsel rendered ineffective assistance in failing to properly prepare, investigate, and make necessary motions regarding private searches conducted by Ronald and the ballistics evidence introduced at trial. First, we note that trial counsel did, on cross-examination of

---

[3] 378 U.S. 368 (1964).

[4] Douglas gave a statement on November 5, 1997, which, even in its redacted form, was extremely lengthy and, as noted by trial counsel, showed consistent stories from Douglas. There is no indication this redacted statement has ever been challenged as inadmissible.

Ronald, elicit testimony showing inconsistency from his direct examination testimony concerning when the bullets were found and when he turned them over to the Sheriff's office. Trial counsel's cross-examination of Ronald and Shelly further revealed inconsistencies between their trial testimony regarding finding the evidence and when it was turned over to the authorities, and it is clear from a review of trial counsel's cross-examination of both that he had reviewed and utilized the information in the statements during his cross-examination. We also observe the recitation by this court in *Douglas I* concerning Shelly finding the bullets and gun box—as opposed to Ronald or Crosby—was of no import to our decision in that case. *See State v. Jolly*, 304 S.C. 34, 39, 402 S.E.2d 895, 898 (Ct. App. 1991) (noting our appellate courts recognize an overriding rule which says: "whatever doesn't make any difference, doesn't matter" (quoting *McCall v. Finley*, 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct. App. 1987))). Further, the PCR court failed to explain how these statements would have supported suppression of the items. Additionally, the PCR court again mischaracterized the testimony of Beach and incorrectly stated Beach expressed concern that *Investigator Stanfield* was involved with the searches. Rather, Beach testified he was not directly involved in the *private searches by Ronald*, and it was not activity he would have sanctioned when he was the chief or the Sheriff. Also, this court determined in *Douglas I* that the private search was not sanctioned by law enforcement—which would include Investigator Stanfield—but Ronald undertook searching Douglas's house on his own. 359 S.C. at 201-02, 597 S.E.2d at 8. Finally, evidence was admitted at trial from Douglas's unchallenged November 5, 1997 statement in which Douglas indicated she "had a bag[,] if y'all searched the thing[,] with socks . . . and bullets in it" that the authorities may have found in their search. Thus, even assuming trial counsel was deficient in this regard, Douglas cannot show prejudice. *See Dawkins*, 346 S.C. at 156, 551 S.E.2d at 262 ("To show prejudice, the applicant must show, but for counsel's errors, there is a reasonable probability the result of the trial would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial." (citing *Brown*, 340 S.C. at 593, 533 S.E.2d at 309-10)).

## 6.     Sentencing

We agree with the PCR court that trial counsel was deficient in failing to object to the trial court's sentence in regard to the murder charge. The proper remedy is resentencing.

The statute in effect at the time of Douglas's sentencing stated as follows: "A person who is convicted of . . . murder must be punished by death, by

imprisonment for life, or by a *mandatory minimum* term of imprisonment for thirty years." S.C. Code Ann. § 16-3-20(A) (2003) (emphasis added). In 2010, the statute was amended to state, "A person who is convicted of . . . murder must be punished by death, or by a mandatory minimum term of imprisonment for thirty years *to life*." S.C. Code Ann. § 16-3-20(A) (2015) (emphasis added).

In the pre-amendment statute case of *State v. Shafer*, the defendant was convicted of murder and sentenced to death. 340 S.C. 291, 294, 531 S.E.2d 524, 526 (2000), *reversed on other grounds*, *Shafer v. South Carolina*, 532 U.S. 36 (2001).[5] During deliberations, the jury inquired about potential parole eligibility if the defendant was given a life sentence. *Id.* at 296-97, 531 S.E.2d at 527. The trial court informed the jury parole eligibility or ineligibility was not a consideration. *Id.* at 297, 531 S.E.2d at 527. On appeal, Shafer argued he was entitled to an instruction on parole ineligibility because the State put his future dangerousness at issue. *Id.* Our supreme court stated, "When the State places the defendant's future dangerousness at issue and the only available alternative sentence to the death penalty is life imprisonment without parole, due process entitles the defendant to inform the jury he is parole ineligible." *Id.* at 297-98, 531 S.E.2d at 528. Citing *State v. Starnes*, 340 S.C. 312, 531 S.E.2d 907 (2000), it held Shafer was not entitled to such an instruction because "life without the possibility of parole is not the only legally available sentence alternative to death." *Id.* at 298, 531 S.E.2d at 528. The court noted in a footnote that it had suggested in *Starnes* that "under the terms of the statute, it is arguable a defendant could be sentenced to more than thirty years and be eligible for parole after service of thirty years." *Id.* at 298 n.7, 531 S.E.2d at 528 n.7. This reference to *Starnes* relates to a footnote in that case which provides as follows: "[T]he sentencing statute provides for a mandatory *minimum* thirty year sentence. Based on the language of the statute, it is arguable a defendant sentenced to more than thirty years is eligible for parole after service of thirty years." 340 S.C. at 330 n.17, 531 S.E.2d at 917 n.17. Douglas raised this sentencing issue on direct appeal, but this court found the issue was unpreserved

---

[5] The United States Supreme Court (USSC) reversed and remanded *Shafer*, finding whenever future dangerousness is at issue in a capital sentencing proceeding under South Carolina's sentencing scheme, due process requires that the jury be informed a life sentence carries no possibility of parole. *State v. Shafer*, 352 S.C. 191, 193-94, 573 S.E.2d 796, 797 (2002). However, our supreme court's interpretation of the statute as allowing other sentences for murder than life or death without the possibility of parole is not affected by the USSC ruling.

because trial counsel failed to make a contemporaneous objection. *Douglas I*, 359 S.C. at 206-07, 597 S.E.2d at 11.

Considering the footnotes in *Shafer* and *Starnes*, as well as the plain language of the statute in effect at the time of sentencing, we find the PCR court correctly held trial counsel was ineffective in failing to object to the trial court's assertion the only two options it had in sentencing under the statute were life or thirty years. *Shafer* and *Starnes* contemplate a defendant could be eligible for a sentence of more than thirty years, but less than life, and that a thirty year sentence is simply the *minimum* a defendant could receive for murder. Further, although it was subsequently amended to leave no doubt as to the intent of the legislature, we believe under a plain reading of the statute in effect at the time of Douglas's sentencing, the trial court had the option to sentence her to more than thirty years, but less than life. *See State v. Blackmon*, 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991) ("It is well established that in interpreting a statute, the court's primary function is to ascertain the intention of the legislature . . . . [I]n construing a statute, words must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation . . . . [W]hen a statute is penal in nature, it must be construed strictly against the State and in favor of the defendant."). Further, we find no merit to the State's argument the trial court's statements clearly indicated it planned to give Douglas the maximum sentence possible such that trial counsel's failure to object had no impact on the sentence. A review of the trial court's discussion indicates only that it viewed its options for Douglas's murder sentence to be limited to thirty years or life. There is no indication the trial court would have sentenced Douglas to life imprisonment regardless of what other options may have been available. Accordingly, we reverse and remand for a new sentencing hearing on Douglas's murder charge.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED IN PART.**

**HUFF, WILLIAMS, and THOMAS, JJ., concur.**